## S07A1333. CURRY v. THE STATE.
(657 SE2d 218)

SEARS, Chief Justice.

The appellant, Curtis Curry, appeals from his conviction of several crimes, including murder, stemming from the shooting of his cousin, Brian Robinson.[1] On appeal, Curry contends that the trial court erred in rejecting Curry's offer to stipulate to his status as a

---

[1] The crimes occurred on November 29, 1998. On January 13, 1999, Curry was indicted for malice murder, for two counts of felony murder (with the possession of a firearm by a convicted felon and the aggravated assault of Robinson as the underlying felonies), for the aggravated assault of Joseph Gwiazdzinski, and for felony obstruction. In addition to the foregoing crimes, the trial court charged the jury on voluntary manslaughter. On May 20, 1999, a jury found Curry guilty on all counts. Curry was sentenced to life in prison for the malice murder conviction, to twenty consecutive years for the aggravated assault of Gwiazdzinski, and to five consecutive years for the obstruction offense. The felony murder convictions were vacated as a matter of law. On June 11, 1999, Curry filed a motion for new trial, and on November 1, 2006,

convicted felon on the felony murder count of the indictment that was predicated on Curry's status as a convicted felon; that the trial court erred in charging the jury on intent; and that the trial court improperly commented on the evidence when it questioned a witness. We conclude that, even if the trial court erred in rejecting Curry's offer to stipulate to his status as a convicted felon, the error was harmless, and that, although the trial court erred in charging on intent, the error was also harmless. As for Curry's last contention, we conclude that the trial court did not improperly comment on the evidence. For these reasons, we affirm Curry's convictions.

1. In the early morning hours of November 29, 1998, Curry went to a party at the apartment of Shantras Scott with his friends, Rodney Harrison and Charity Dagadu, and his cousin, Brian Robinson. Three eyewitnesses — Harrison, Dagadu, and Jacob Wood — testified that Curry, without provocation from Robinson, shot Robinson nine times about 3:30 a.m. Shortly thereafter, Joseph Gwiazdzinski, who was also at the party, called Curry a psychopath, and Curry struck Gwiazdzinski with his gun, knocking him out and cutting his head severely.

When police responded to the scene, Curry was still present and resisted arrest. One officer attempted to put handcuffs on Curry, and Curry told her not "to fucking touch me" and that "you're going to have to kill me first bitch." When another officer attempted to put handcuffs on Curry, Curry punched him, scratched him with his fingernails, and tried to get his gun out of his holster. Ultimately, three officers were able to subdue Curry.

Forensic evidence established that Robinson was shot nine times. Five of Robinson's wounds were fatal, including a wound to the back of the head, one to the right upper chest, one to the right lower chest, one to the middle of the back, and one to the right lower back. Robinson suffered non-fatal wounds to the right upper back, to the right elbow, to the left upper arm, and to the palm of his left hand.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Curry guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Count 2 of the indictment charged Curry with felony murder, with the possession of a firearm by a convicted felon serving as the underlying felony. The felony for which Curry had been convicted was an aggravated assault with a firearm. At trial, Curry offered to

---

he filed an amended motion for new trial. On February 9, 2007, the trial court denied the motion for new trial, as amended, and on March 5, 2007, Curry filed a notice of appeal. On May 18, the appeal was docketed in this Court, and on September 10, 2007, it was orally argued.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

stipulate that he was a convicted felon. The trial court, however, permitted the State to prove Curry's convicted felon status by introducing his prior indictment and his plea of guilty. Curry now contends that this ruling was erroneous.

In *Ross v. State*,[3] we held that, if the sole purpose of introducing evidence of a defendant's prior conviction is to prove the defendant's status as a convicted felon, and if "a defendant's prior conviction is of the nature likely to inflame the passions of the jury and raise the risk of a conviction based on improper considerations," it is error for the trial court not to permit a defendant to stipulate to his status as a convicted felon.[4] In the present case, we need not address whether Curry's prior conviction was "of a nature likely to inflame the passions of the jury," as we conclude, as we did in *Ross*, that any error in failing to permit Curry to stipulate to his prior conviction was harmless due to the overwhelming evidence of Curry's guilt.[5]

3. Curry contends that the trial court erred in charging the jury that it could infer the intent to kill from the use of a deadly weapon. Although this charge was error under this Court's holding in *Harris v. State*,[6] given the overwhelming evidence that Curry repeatedly shot the victim without provocation from the victim, the charge constitutes harmless error.[7]

4. Curry contends that the trial court erred in its questioning of a firearms expert about trigger pulls and hollow point ammunition, improperly intimating the court's opinion regarding Curry's state of mind.

The State presented the testimony of Bernadette Davy as a firearms expert. She testified that the nine shots that Curry fired could be fired "just as fast as you can pull the trigger" and at least within five seconds. As a result of questioning from the trial court, the witness explained that the murder weapon was a semi-automatic weapon and that the trigger had to be pulled to fire each shot. The trial court also asked the witness whether Curry fired hollow point bullets and what the difference was between hollow and solid point bullets. Davy responded that the bullets were hollow point and that they are designed to expand when they hit the target.

---

[3] 279 Ga. 365 (614 SE2d 31) (2005). Although *Ross* was decided after Curry's trial, *Ross* applies to cases, such as the present one, that were in the "pipeline" when *Ross* was decided. *Lindsey v. State*, 282 Ga. 447, 452 (651 SE2d 66) (2007).

[4] Id. at 368.

[5] Id.

[6] 273 Ga. 608 (543 SE2d 716) (2001). Although *Harris* was decided after Curry's trial, *Harris* expressly held that its rule would apply to all cases in the "pipeline" – those cases on direct review or not yet final. Id. at 610.

[7] *Flanders v. State*, 279 Ga. 35, 40 (609 SE2d 346) (2005); *Fulton v. State*, 278 Ga. 58, 61 (597 SE2d 396) (2004).

A trial judge "may propound questions to a witness to develop the truth of the case, to clarify testimony, to comment on pertinent evidentiary rules and to exercise its discretion when controlling the conduct of counsel or witnesses in order to enforce its duty to ensure a fair trial to both sides."[8] The extent of such examinations "is a matter for the trial court's discretion."[9] A trial court, however, may not during such questioning "express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[10] Having reviewed the transcript, we conclude that the trial court's questions did not amount to an improper expression of opinion regarding Curry's guilt. Instead, because the court's questions were entirely objective, did not suggest any particular answer to the witness, and related to the events surrounding the homicide, we conclude that the trial court's questions fell within the court's discretion to ask questions to develop the truth of the case.[11]

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 11, 2008.

*Thomas J. Killeen*, for appellant.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.

---

[8] *Dickens v. State*, 280 Ga. 320, 324 (627 SE2d 587) (2006) (citations omitted).

[9] *Mullins v. State*, 269 Ga. 157, 159 (496 SE2d 252) (1998).

[10] OCGA § 17-8-57.

[11] See *Dickens*, 280 Ga. at 324; *Mullins*, 269 Ga. at 159.