**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 9, 2013**

# In the Court of Appeals of Georgia

A13A1257. THE STATE v. NICKERSON.

ELLINGTON, Presiding Judge.

A Muscogee County jury found Hendrick Nickerson guilty beyond a reasonable doubt of voluntary manslaughter, OCGA § 16-5-2 (a); and possession of a firearm during the commission of a crime against the person of another, OCGA § 16-11-106 (b) (1). The Superior Court of Muscogee County[1] granted Nickerson's motion for new trial based upon its finding that the judge who presided over the trial had impermissibly commented on the evidence, in violation of OCGA § 17-8-57, when he posed two questions to Nickerson during his testimony in the jury's

---

[1] The superior court judge who granted the motion for new trial was not the judge who had presided over the trial.

presence. The State appeals,[2] arguing that the presiding judge's questions did not violate OCGA § 17-8-57, and, as a result, Nickerson was not entitled to a new trial. After conducting a de novo review of the record and the superior court's ruling,[3] we conclude that the superior court erred and, thus, reverse the order granting Nickerson a new trial.

Viewed in favor of the jury's verdict,[4] the evidence showed that, on March 22, 2007, Nickerson was at his girlfriend's house when she and the victim's girlfriend began arguing. When the argument was over, Nickerson left the house and started walking toward his aunt's house about two blocks away. Before he got there, however, the victim drove up and parked near him, exited the car, and walked toward Nickerson while holding a handgun. Nickerson, who had a handgun in his back pocket, backed away from the victim, who continued to walk toward him, while the

---

[2] See OCGA § 5-7-1 (a) (8) (authorizing the State to appeal from an order granting a motion for new trial in a criminal case).

[3] "[T]he first grant of a new trial on special grounds involving a question of law is reviewable in a proper appeal. We review such a question of law de novo and reverse if the trial court committed legal error." (Citations and punctuation omitted.) *O'Neal v. State*, 285 Ga. 361, 363 (677 SE2d 90) (2009).

[4] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

two men argued loudly and cursed at one another. Shortly thereafter, as the victim turned away from Nickerson and appeared to be walking back to his car, Nickerson fired two shots toward the victim. One of the bullets hit the victim in the middle of his back, grazed his spinal column, esophagus, and aorta, and lodged in his heart; he later died as a result of the wound. When Nickerson realized that he had shot the victim, he approached him and repeatedly apologized to him before leaving the scene. According to a bystander, before police officers arrived, an unidentified man approached the victim, picked up the handgun that was on the ground near the victim's hand, and ran away with it.[5]

Nickerson turned himself in to the police the next day, and the State charged him with murder, felony murder, voluntary manslaughter, and possession of a firearm during the commission of a crime. At trial, the State called an eyewitness to the entire encounter who testified that the victim's back was turned toward Nickerson and that Nickerson was facing the victim when he (Nickerson) raised his arm and shot the victim. She testified that the victim never pointed his handgun at Nickerson or fired it. The State also showed that police officers found a "live" .380 bullet (i.e., one that had not been fired) next to the victim's car, where the victim had collapsed after

---

[5] Investigators never retrieved the victim's handgun.

3

being wounded; two empty .380 shell casings that had been ejected from a semi-automatic handgun thirty-five to forty feet from the car; and another "live" .380 bullet about five or six feet from the empty casings.

Nickerson testified at trial and admitted that he shot and killed the victim, but he claimed that he did so in self-defense. According to Nickerson, the victim walked toward him with a handgun while threatening to kill him. While Nickerson backed away, the victim raised his arm and pointed his gun at him. The gun must have malfunctioned, however, because Nickerson heard a "clicking" sound and saw the victim turn to his side and try to fix his gun. Nickerson then turned around to leave the scene, but, as he did so, he saw the victim turning back toward him and was afraid that the victim was going to shoot him. As a result, while he was still facing away from the victim, Nickerson pointed his gun over his shoulder and fired behind him, toward the victim.

1. On appeal from the superior court's grant of Nickerson's motion for new trial, the State argues that the presiding judge did not violate OCGA § 17-8-57 when he asked Nickerson to repeat a physical demonstration showing how he had fired the gun and when he asked Nickerson how many times he shot the gun.

4

Under OCGA § 17-8-57, "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." The statute also states that, "[s]hould any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give." Thus, "a violation of OCGA § 17-8-57 will always constitute 'plain error,' meaning that the failure to object at trial will not waive the issue on appeal. On appeal, the issue is simply whether there was such a violation. If so, it is well established that the statutory language is mandatory and that a violation of OCGA § 17-8-57 requires a new trial." (Citation and punctuation omitted.) *Linson v. State*, 287 Ga. 881, 883 (2) (700 SE2d 394) (2010) ("Such reversal is required, though, only when such comments are made in the presence of the jury.") (citations and punctuation omitted). See also *Lockaby v. State*, 265 Ga. App. 527, 528 (1) (594 SE2d 729) (2004) (noting that the purpose of OCGA § 17-8-57 is to prevent the jury from being improperly influenced by the trial court judge).

However,

it is well settled that a trial court may propound a clarifying question in order to develop the truth of a case without violating [OCGA § 17-8-57]. The extent of such questioning is a matter of the trial court's discretion, as long as the questioning does not intimate an opinion as to what has or has not been proved or as to the guilt of the accused.

(Citation and punctuation omitted.) *Littlejohn v. State*, 320 Ga. App. 197, 203 (2) (739 SE2d 682) (2013). See *Mullins v. State*, 269 Ga. 157, 158-159 (3) (496 SE2d 252) (1998) (accord). "In propounding questions to a witness to develop the truth or clarify an issue, the trial judge is permitted to ask leading questions[, and] the mere fact that the responses of the witness may be detrimental to the defendant is not cause in itself for granting a new trial." (Citations omitted.) *Sims v. State*, 306 Ga. App. 68, 72 (2) (701 SE2d 534) (2010). See also *Curry v. State*, 283 Ga. 99, 102 (4) (657 SE2d 218) (2008) (holding that, "because the court's questions were entirely objective, did not suggest any particular answer to the witness, and related to the events surrounding the homicide, . . . [they] fell within the court's discretion to ask questions to develop the truth of the case") (footnote omitted).

The trial transcript in this case shows that the following exchange transpired during defense counsel's direct examination of Nickerson:

Q: Was [the victim] cursing, using foul language?

6

A: He [used] one [curse word] when he said I'm going to kill you. Then he told me he didn't want to hear that shit.

Q: What did you do after you saw [the victim] with the gun cursing you and using that language?

A: I started backing up.

Q: And what happened then? Did he raise the gun at you at any other time?

A: Yeah, he raised the gun at me when he tried to shoot it.

Q: Now, when he tried to shoot the gun[,] where was the gun pointed at?

A: He had it pointed at me. I don't actually know where he was trying to aim it or whatever.

Q: And what did you see him do? Explain that, how you say he tried to shoot you[.]

A: He tried to shoot [his gun,] and it just clicked. And then he like went down to the side. He went to the side and then tried to fix it or whatever.

Q: Could you come out and stand [in front of the jury.] . . . So supposing [that] . . . you're [the victim]. . . .

A: Yes, sir.

Q: Just show the jury how he tried to shoot you[.]

A: He tried to shoot it. It clicked. He turned, he turned about right here and tried to fix it. . . . And then he [was] about to turn back. . . . I started turning and . . . walking toward the side like this. And then he look[ed] like he [was] going to turn and raise [the gun] and I just turned around and I just shot backwards. I don't know what he did after that though.

Q: You shot backwards?

A: Yes, sir.

Q: You [weren't] looking at him?

A: No, because he look[ed] like he [was] about to raise the gun again and try to shoot me.

Q: Okay. You can have a seat.

COURT: *Show me one more time how you shot backwards*[.]

A: I was like this. When I had turned all the way around like this.

Q: Is that when you fired the weapon?

A: Yes, sir.

Q: And that's how you fired the weapon?

A: Yes, sir.
COURT: *How many shots?*
A: At least once or twice.
Q: You can be seated.

(Emphasis supplied.)

The superior court granted Nickerson's motion for new trial based on its conclusion that the presiding judge's two questions during this interchange violated OCGA § 17-8-57. Viewing the judge's questions in context, however, we conclude that they were interposed to clarify Nickerson's testimony and to develop the truth in this case and that, as a result, the superior court erred in finding that the questions constituted a violation of OCGA § 17-8-57. See *Littlejohn v. State*, 320 Ga. App. at 203-204 (2) (concluding that the trial court's questions to a police investigator about whether an informant's information was reliable, and to the informant about his transactions with the defendant, were interposed to develop the truth and to clarify the witnesses' testimony and, thus, did not violate OCGA § 17-8-57); *Sims v. State*, 306 Ga. App. at 71-72 (2) (concluding that the trial judge did not violate OCGA § 17-8-57 when he questioned the defendant's alibi witness about when he first learned of the burglary at issue and when he remembered that he had visited the defendant on

8

the day of the burglary). Accordingly, Nickerson was not entitled to a new trial on that basis.

2. In his responsive brief, Nickerson argues that, even if the two questions addressed above did not violate OCGA § 17-8-57, other questions and comments by the presiding judge during trial constituted such violations and, as a result, he was entitled to a new trial on that alternative basis. These alleged errors, however, are not subject to review in this appeal.

The record shows that, in its order granting a new trial, the superior court specifically ruled that, apart from the questions at issue in Division 1, supra, "the other instances referred to by defense counsel in the [new trial] hearing do not merit reversal of the conviction under OCGA § 17-8-57[,]" and that all other grounds raised by Nickerson in his motion for new trial were denied or deemed abandoned.[6]

Consequently, in order to secure appellate review of the superior court's adverse rulings on the other alleged violations of OCGA § 17-8-57, Nickerson was required to file either a cross-appeal to the instant appeal or a separate notice of

---

[6] In addition, during the new trial hearing, the superior court verbally ruled that Nickerson had abandoned his other allegations of a violation of OCGA § 17-8-57, and Nickerson's counsel responded, "Yes, Your Honor. I understand."

9

appeal. See OCGA §§ 5-7-1 (b);[7] 5-6-38 (a);[8] *State v. Wofford*, 321 Ga. App. 249, 259 (2) (739 SE2d 110) (2013) (Because the defendant failed to file any post-conviction notice of appeal or a cross-appeal, he failed to bring his allegations of pretrial and trial error within the purview of the State's appeal.).[9] Because Nickerson failed to file a cross-appeal or an independent appeal, we lack jurisdiction to consider his allegations of error arising from the superior court's adverse rulings.

---

[7] OCGA § 5-7-1 (b) provides that, "[i]n any instance in which any appeal is taken by and on behalf of the State of Georgia in a criminal case, the defendant shall have the right to cross appeal. Such cross appeal shall be subject to the same rules of practice and procedure as provided for in civil cases under Code Section 5-6-38."

[8] OCGA § 5-6-38 (a) provides, in relevant part, that "the appellee may institute cross appeal by filing notice thereof within 15 days from service of the notice of appeal by the appellant; and the appellee may present for adjudication on the cross appeal all errors or rulings adversely affecting him[.]"

[9] See also *State v. Pye*, 282 Ga. 796, 803, n. 11 (653 SE2d 450) (2007) (Although the defendant's brief included a purported enumeration of error and was denominated "Response Brief and Cross-Appeal of Appellee," because the defendant had not filed a notice of cross-appeal, the Court ruled that it could not consider the purported enumeration of error.); cf. *State v. James*, 292 Ga. 440, 442 (2) (738 SE2d 601) (2013) (The Court reversed the grant of a new trial on the only ground that the trial court had ruled upon, reinstated the defendants' convictions, and remanded the case to the trial court for a ruling on the remaining grounds set forth in the defendants' motions for new trial.); *State v. Folsom*, 286 Ga. 105, 107-108 (2) (686 SE2d 239) (2009) (After the State appealed the grant of a motion to suppress the defendant's pre-*Miranda* statements, the defendant properly filed a cross-appeal to argue that the trial court erred in finding that his post-*Miranda* statements were admissible.).

*Judgment reversed. Phipps, C. J., and Branch, J., concur.*