301 Ga. 822
FINAL COPY

S17A0929.  EDWARDS v. THE STATE.

PETERSON, Justice.

Ryan Russell Edwards was convicted of malice murder and other crimes in connection with the death of his 13-month-old child.[1] Edwards appeals and argues that the trial court (1) erred in granting the State's challenge to his use of peremptory strikes against certain jury members, (2) improperly prohibited him from preserving his claim that trial counsel was ineffective, and (3) made a merger error at sentencing. We agree that the trial court made a merger error and

---

[1] For crimes occurring in January 2012, Edwards was indicted for malice murder (Count 1), three counts of felony murder (Counts 2, 3, and 4), two counts of aggravated assault (Counts 5 and 7), three counts of aggravated battery (Counts 6, 8, and 9) and five counts of cruelty to children (Counts 10, 11, 12, 13, and 14). Following a trial in May 2013, a jury found Edwards guilty of all counts except Count 13.  The trial court sentenced Edwards to life in prison without parole for Count 1 and six consecutive 20-year sentences for Counts 5 (aggravated assault), 9 (aggravated battery), 10, 11, 12, and 14 (cruelty to children).  The trial court also purported to merge the felony murder counts into the malice murder count for sentencing purposes, and merged Counts 6, 7, and 8 into the malice murder count. Edwards filed a timely motion for new trial, which he subsequently amended. After the trial court entered its order denying the motion for new trial, Edwards filed a timely notice of appeal, and the case was docketed to this Court for the term beginning in April 2017 and submitted for a decision on the briefs.

therefore vacate in part and remand for resentencing, but we otherwise affirm Edwards's convictions.

Viewed in the light most favorable to the verdict, the trial evidence showed as follows. Edwards and Toni Brown had a child, Mikkah, who was born in December 2010.  Mikkah lived with Brown and her two other children, A. B. and B. B. In January 2012, Brown, who was working two jobs while also attending college, called Edwards to watch her children after her babysitter quit unexpectedly. Edwards agreed and stayed at Brown's home for a few days to watch the children while Brown was at work.

On January 26, Brown saw Mikkah before she left for work around 10:20 p.m., and he appeared healthy and was behaving normally. During the night, A. B., who was then 12 years old, went downstairs to get a drink of water and saw Edwards holding onto something tied around 13-month-old Mikkah's neck and swinging the child like a "rag doll." A. B. said that Edwards swung Mikkah around for 30 to 45 seconds. When Edwards finally noticed A. B., he sat Mikkah on the floor. A. B. was concerned and wanted to call his mother but couldn't because Edwards had the only phone in the house.

When Brown returned from work the following morning (January 27), she checked on her kids. Mikkah was in bed with Edwards and appeared to be asleep. When Brown kissed Mikkah, she noticed an abrasion on his forehead. Brown asked Edwards about the injury, and he responded that Mikkah might have fallen off a toilet. Edwards took the child out of the room, telling Brown to rest and reassuring her that Mikkah was fine and just tired from staying up late. Brown noticed that Mikkah's head was "wobbly" when Edwards picked him up.

At some point, A. B. told Brown that he saw Edwards swinging Mikkah around by his neck the night before. Brown tried to wake Mikkah, but he was unresponsive and his head was "flopping around." Brown rushed Mikkah to a pediatric urgent care facility, accompanied by Edwards and her two other children. Nurses told Brown that Mikkah was in respiratory arrest and needed to be airlifted to a children's hospital. The police were called after A. B. told urgent care staff about Edwards's actions the previous night. Edwards told the police that Mikkah had been sick and throwing up and that Edwards began to play fight with the child to "get his energy level back up."

3

After being airlifted to the children's hospital, Mikkah was placed on life support. Doctors told Brown that Mikkah had severe brain damage, part of his brain stem was gone, and he would never breathe or eat on his own or speak again. Mikkah was taken off life support after a few days and died as a result of his injuries.

A medical examiner testified that Mikkah's cause of death was blunt force head trauma evidenced by retinal hemorrhages, a swollen brain, subdural hemorrhages, and two skull fractures caused by at least two forceful impacts to the child's head. A physician with experience in child abuse issues who evaluated Mikkah at the children's hospital testified that the retinal hemorrhages were consistent with rapid acceleration and deceleration of the head, such as by significant and forceful head trauma. The doctors also described the child's other injuries, including a tear to the child's frenulum likely caused by a very forceful impact to the mouth; abrasions and bruising on the neck, back, and chest; and additional hemorrhages in the thoracic and lumbar regions of the child's spinal cord.

1. Although Edwards does not challenge the sufficiency of the evidence, it is our customary practice in murder cases nevertheless to review the record

and determine whether the evidence was legally sufficient.  Having done so, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Edwards was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Pursuant to Georgia v. McCollum, 505 U. S. 42 (112 SCt 2348, 120 LE2d 33) (1992), the State challenged Edwards's peremptory strikes against Jurors 45, 57, 59, 68, 70, and 73. Edwards argues that the trial court erred in evaluating the State's motion because the court improperly combined steps two and three of the three-part McCollum evaluation, which impermissibly shifted the burden of persuasion. We disagree.

In McCollum, the Supreme Court of the United States held that defendants are prohibited from engaging in purposeful racial discrimination in the exercise of peremptory strikes. See Allen v. State, 280 Ga. 678, 680 (2) (b) (631 SE2d 699) (2006). When the State raises a McCollum objection, the trial court must engage in a three-step process to determine if the defendant's peremptory challenges were used in a racially discriminatory manner. Id.

> The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent.

Id. (citation omitted). Although the burden of production shifts to the defendant if the State makes a prima facie case, the ultimate burden of persuasion as to discriminatory intent rests with — and never shifts from — the State. See Purkett v. Elem, 514 U.S. 765, 768 (115 SCt 1769, 131 LE2d 834) (1995); Chandler v. State, 266 Ga. 509, 510 (467 SE2d 562) (1996).

We find no merit to Edwards's argument that the court improperly merged steps two and three of the McCollum inquiry. After the trial court found that the State made a prima facie case of racial discrimination, the court asked Edwards to explain his reasons for the strikes. Following Edwards's race-neutral reasons, the trial court asked the State for additional argument, implicitly indicating it was moving to step three. The State did not challenge Edwards's reasons for striking Juror 68 but argued that his reasons for striking the other jurors were pretextual. The trial court gave Edwards one final opportunity to make an argument, saying "at this point in time, the burden is on you. You get the final word." Reading this last statement in isolation may appear as though the court

placed the ultimate burden of persuasion on Edwards. But we don't read statements in isolation; we read them in context. See Brown v. State, 290 Ga. 865, 868 (2) (b) (725 SE2d 320) (2012) ("[W]ords often gain meaning from context . . . ."). In context, the trial court suggested to Edwards that it was tentatively persuaded by the State's argument and was giving him one final opportunity to convince the court to accept his reasons for using his peremptory strikes. Edwards gave additional arguments before the court sustained the State's motion as to Jurors 45, 57, 59, 70, and 73 and denied the motion as to Juror 68.[2] The fact that the trial court used the term "race neutral" in its ultimate findings — a term generally used in connection with the second McCollum step — does not alter our conclusion that the court properly conducted the McCollum inquiry in considering Edwards's peremptory strikes. See Coleman v. State, 301 Ga. 720, 724 (4) (804 SE2d 24) (2017) (concluding that, although trial court used the term "race neutral" in its ultimate findings, suggesting that it stopped at step two of the three-part Batson inquiry, the record showed that

---

[2] After granting the State's motion in part, the trial court reinstated Jurors 45, 57, 59, 70, and 73 and redid the striking process. Edwards again exercised a peremptory strike on Juror 59, and the State did not challenge his reason for striking her. Edwards accepted Jurors 45 and 57. There was no further discussion about Jurors 70 and 73 because enough jurors had been chosen to serve on the jury.

trial court implicitly engaged in third step by hearing arguments and making findings accepting the State's reasons offered at step two).

The cases cited by Edwards where a trial court improperly merged steps two and three are readily distinguishable. In those cases, the trial court rejected the defendant's reasons at the second step and terminated further inquiry. See, e.g., Jackson v. State, 265 Ga. 897, 899 (2) (463 SE2d 699) (1995) (trial court erred by saying it would not accept articulated reason as race neutral); Burkett v. State, 230 Ga. App. 676, 677 (1) (497 SE2d 807) (1998) (defendant entitled to new trial where trial court rejected defendant's articulated race-neutral reasons without any additional argument from the State). In this case, however, the trial court did not terminate further inquiry after the second step, as the court asked the State for additional arguments after Edwards articulated his reasons.

Edwards also suggests that we presume error because the trial judge in this case was previously reversed in a different case for failing to apply McCollum properly. But we do not presume error simply because a judge erred in a previous case. Quite the opposite, in fact; absent evidence of error, we presume trial courts follow the law. See Hall v. State, 202 Ga. 619, 622 (44 SE2d 234) (1947). In reviewing a trial court's McCollum ruling, we afford deference to the

8

court's findings and affirm them unless they are clearly erroneous. <u>Allen</u>, 280 Ga. at 682 (2) (b). The record here does not reflect that the trial court combined steps two and three of the <u>McCollum</u> test or that its findings were clearly erroneous.

3. Edwards argues that the trial court prohibited him from preserving his ineffectiveness claim against trial counsel, and thus requests a remand to perfect the record. We disagree.

In his amended motion for new trial, Edwards asserted that trial counsel was ineffective for failing to discover and present favorable evidence. In furtherance of this claim, Edwards subpoenaed school and Division of Family and Children Services records relating to Mikkah, A. B., and B. B., and asked the court to conduct an in-camera inspection of those confidential records to determine whether there was evidence to support his ineffectiveness claim. At the outset of the motion for new trial hearing, apparently under the impression that the requested confidential records had not been produced, Edwards asked for a continuance on the ineffectiveness claim. The court told Edwards that it received and reviewed the records, and that it had not provided any material to him because there was nothing in the records to support his claim. Edwards

responded that he was ready to proceed with his only other claim. After the court orally denied that claim and said it was denying Edwards's motion for new trial, the court asked if there was anything further. Edwards responded by saying that he had nothing else. The next day, Edwards filed a motion for reconsideration, requesting an evidentiary hearing on the ineffectiveness claim related to counsel's alleged failure to investigate. The trial court denied the request on the ground that Edwards had waived the right to a hearing by his statements at the motion for new trial hearing.

We agree with the trial court that Edwards waived his right to a hearing on his ineffectiveness claim by affirmatively saying he had nothing else to present after the court rejected his other argument. Waiving a right to a hearing on an ineffectiveness claim, however, is not the same as waiving the claim itself. See Wilson v. State, 277 Ga. 195, 199 (2) (586 SE2d 669) (2003). We may review the claim based on the existing record but will reject ineffectiveness claims not supported by the record. Id. Such is the case here.

Edwards does not point to any specific favorable evidence trial counsel failed to present. This is fatal to his claim. The trial court's ruling after an in-camera inspection that the records did not contain any exculpatory material

10

establishes that as a matter of fact absent a showing to the contrary. See Dempsey v. State, 279 Ga. 546, 548 (3) (615 SE2d 522) (2005). Mere speculation is insufficient to satisfy this burden. Id. Because Edwards has failed to show that trial counsel failed to produce materially favorable evidence, his ineffectiveness claim fails. See Battles v. State, 290 Ga. 226, 230-231 (3) (719 SE2d 423) (2011) (affirming trial court's order limiting access to certain evidence that might support an ineffectiveness claim and rejecting ineffectiveness claim where appellant failed to show that, had he been given access to the evidence, he would have obtained favorable information that would have affected the outcome of the trial).

4. The trial court purported to merge the three felony murder counts (Counts 2, 3, and 4) into the malice murder count, and merged two of the predicate felony counts that were separately charged (Counts 6 and 7) into the malice murder count as well. Edwards argues that the trial court erred by merging the felony murder counts into the malice murder count because those counts were vacated by operation of law, and asserts that the court should have also merged the last predicate felony count (Count 5) into the malice murder sentence.

We agree that the felony murder counts were vacated by operation of law and therefore vacate that portion of the trial court's sentencing order. See McClendon v. State, 299 Ga. 611, 619 (6) (791 SE2d 69) (2016). We now turn to consider other possible merger errors.

(a) Count 5 charged Edwards with aggravated assault for swinging Mikkah around by an object tied around the child's neck and causing serious injury. We reject Edwards's argument that Count 5 merged with the malice murder conviction.

"[W]here a victim suffers a series of injuries inflicted by a single assailant in rapid succession, each injury does not constitute a separate assault." Reddings v. State, 292 Ga. 364, 366 (2) (738 SE2d 49) (2013). Separate convictions for the malice murder and aggravated assault of a single victim are authorized, however, where the evidence shows that the defendant committed an aggravated assault independent of the act that caused the victim's death. Coleman v. State, 286 Ga. 291, 295 (3) (687 SE2d 427) (2009). To authorize a separate conviction, there must be a "deliberate interval" separating the infliction of an initial non-fatal injury from the infliction of a subsequent fatal injury. Id. In the absence of some evidence of a deliberate interval, the aggravated assault

conviction must be vacated. See Johnson v. State, 300 Ga. 665, 667 (2) (797 SE2d 903) (2017).

Here, the evidence does not require merger. The medical examiner stated that the external injuries on Mikkah's neck, which were correlated to having been swung around the neck, did not have any associated internal injuries and thus did not contribute to his death, which was caused by forceful impacts to the head. A.B. testified that once Edwards stopped swinging Mikkah, he put the child on the floor and went to sit at a nearby desk. A. B.'s testimony about Mikkah's condition at this point is ambiguous, as A. B. testified that Mikkah was sitting up at that point but also that Mikkah was flat on the floor. The evidence that Mikkah was sitting up is some evidence of a "deliberate interval" between the non-fatal injuries inflicted by the aggravated assault charged in Count 5 and the fatal blows to Mikkah's head that caused his death, because the medical examiner testified that Mikkah would not have been able to keep his head up after sustaining the deadly blows to the head. Merger of Count 5 thus was not required.

(b) Even though Edwards does not raise the issue, our review of the evidence shows that Count 9 — aggravated battery — should have merged with

13

malice murder. See <u>Nazario v. State</u>, 293 Ga. 480, 486 (2) (b) (746 SE2d 109) (2013) (we may decide merger issues even if the issue was not raised in the trial court or enumerated as error on appeal). Count 9 charged Edwards with maliciously causing bodily harm to Mikkah by rendering his eyes useless as a result of retinal hemorrhages. The evidence shows that the retinal hemorrhages were the result of the blunt force trauma to Mikkah's head. The aggravated battery thus was not separate and distinct from the malice murder. See <u>Ledford v. State</u>, 289 Ga. 70, 73-74 (1) (709 SE2d 239) (2011) (aggravated battery counts merged with malice murder because both offenses were established by the same conduct and the only difference was the offense of battery required a less serious injury to the victim than the offense of murder). Accordingly, we vacate Edwards's conviction on Count 9 and remand the case to the trial court for resentencing.

<u>Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.</u>

Decided August 28, 2017.

Murder. Clayton Superior Court. Before Judge Collier.

Genevieve Holmes, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Elizabeth Rosenwasser, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.