306 Ga. 441
FINAL COPY

S19A0686. VICTORIA v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Jerome Marquis Victoria appeals his convictions for felony murder and possession of a firearm by a convicted felon, contending only that he received ineffective assistance of counsel regarding a potential plea deal offer.[1] For the reasons set forth below, we affirm.

---

[1] On June 14, 2007, Victoria was indicted for malice murder, felony murder predicated on aggravated assault, and possession of a firearm by a convicted felon. Following a jury trial ending on June 19, 2008, the jury acquitted Victoria of malice murder, but found him guilty of felony murder and possession of a firearm. At that time, the trial court sentenced Victoria as a recidivist to life without parole for felony murder and five consecutive years for possession of a firearm. See OCGA § 17-10-7. Victoria filed a motion for new trial on July 18, 2008, and amended it on December 4, 2008. The trial court denied this motion on March 16, 2009, and, on the same day, reduced Victoria's sentence for felony murder to life with the possibility of parole after finding that it had improperly applied recidivist sentencing. Victoria did not appeal the trial court's ruling. However, on January 29, 2018, Victoria filed a motion for out-of-time appeal, which the trial court granted on May 14, 2018. Thereafter, Victoria filed a second motion for new trial on May 29, 2018, which the trial court denied on November 19, 2018. On December 18, 2018, Victoria filed a timely notice of appeal, and his case, submitted for decision on the briefs, was docketed to the April 2019 term of this Court.

1. In the light most favorable to the verdict, the record shows that, on October 14, 2006, Tosaki Voshon Forrest went looking for Victoria at the home of an acquaintance. Forrest believed that Victoria had stolen guns from him and wanted to talk to Victoria about it. After learning that Victoria was in the master bedroom of the home, Forrest, who was unarmed, went in to speak to Victoria. From outside the bedroom, witnesses heard Forrest state, "So that's how it is," and, "All right, Bootsie, all right, all right."[2] Gunshots followed, and Forrest ran out of the home, only to collapse on the ground outside where he died from a gunshot wound to the chest.

When police responded soon thereafter, they saw Victoria running from the residence and stopped him. Victoria stated that he and Forrest had been robbed and attacked by unknown perpetrators. A witness then approached and informed the investigating officer that Victoria had fired a gun inside the residence. The officer searched Victoria and located a box of .22-caliber bullets in his left front pants pocket, a pistol grip in his right

---

[2] "Bootsie" is Victoria's nickname.

front pants pocket, and an ID for a person named Antonio Johnson. Victoria was then arrested and transported to the jail.

Subsequent investigation revealed that the shooting occurred in the master bedroom, as evidenced by three bullet holes in the wall and the discovery of two live .22-caliber rounds. The police found a Lorcin .380 semiautomatic handgun and a Rohm .22-caliber revolver at the edge of a neighbor's yard across the street.[3] The Lorcin did not contain any rounds; however, the Rohm contained four shell casings and two live rounds. The Lorcin appeared to be jammed and was missing a grip like the one found in Victoria's pocket. Testing showed that the .22-caliber bullet recovered from the victim's body was fired from the Rohm revolver found at the scene.

This evidence was sufficient to enable the jury to find beyond a reasonable doubt that Victoria was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61

---

[3] Witnesses testified that Victoria had two handguns in his possession when he arrived at the house. When told by police that the guns had been located, Victoria claimed that he had only touched the guns when he had been cleaning Forrest's home at an earlier time.

LE2d 560) (1979). [4]

2. In his sole enumeration of error, Victoria contends that trial counsel rendered ineffective assistance by failing to fully inform him about the consequences of a pretrial offer for a plea deal that he repeatedly rejected. Generally,

> [i]n order to succeed on his claim of ineffective assistance, [Victoria] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

With regard to the prejudice prong,

---

[4] Although Victoria does not challenge the sufficiency of the evidence, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. See, e.g., *Edwards v. State*, 301 Ga. 822, 824 (1) (804 SE2d 404) (2017).

[i]n a case such as this one, involving the alleged ineffective assistance of counsel in the context of a rejected plea offer, the United States Supreme Court has held that where the performance of a criminal defendant's trial counsel was deficient, the defendant "must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (II) (B) (132 SCt 1376, 182 LE2d 398) (2012). Three criteria must be met to satisfy the prejudice prong of the *Strickland* test. The defendant must show:

> [1] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 164. See also *Missouri v. Frye*, 566 U. S. 134 (132 SCt 1399, 182 LE2d 379) (2012).

(Footnote omitted.) *Gramiak v. Beasley*, 304 Ga. 512, 515 (I) (B) (820 SE2d 50) (2018).

Here, Victoria has proven neither deficient performance nor prejudice. The record shows that Francis Stubbs acted as Victoria's counsel for his initial bond hearing. Afterwards, Stubbs was

replaced by Stephen Yekel, who temporarily represented Victoria during the pretrial period. Yekel testified that, during his tenure as pretrial counsel, he met with Victoria twice. On November 16, 2007, he met with Victoria for four-and-a-half hours. During this time, Yekel went over the entire file and all of the discovery with Victoria. In addition, Yekel presented an oral plea offer of twenty years to serve on voluntary manslaughter.[5] Victoria, however, rejected this plea offer. Yekel then discussed with Victoria alternative pleas that he could request from the State for less time served, and, later, Yekel presented these alternatives to the State. The State, however, refused the alternatives and indicated that the original plea offer was the best deal the State was willing to give. On November 20, 2007, Yekel met with Victoria to convey this new information, but Victoria once again refused the State's offer. A short time later, Victoria mentioned to a jailer that he had been given an offer by the State that he did not like.

---

[5] It is undisputed that no formal written plea offer was ever made by the State. Only oral offers were conveyed.

Yekel later withdrew from his representation of Victoria, and Stubbs, who filed a notice of appearance on January 29, 2008, took over as trial counsel after being rehired by Victoria. Stubbs handled Victoria's trial and, afterwards, filed a motion for new trial alleging, among other things, that Yekel provided ineffective assistance by never telling Victoria about the plea offer. Following a hearing at which Yekel and Victoria testified, this original motion for new trial was denied on March 16, 2009, as the trial court credited Yekel's testimony over Victoria's to find that Yekel had, in fact, informed Victoria about the potential plea agreement. No appeal of this decision was attempted. Victoria later filed a motion for out-of-time appeal that was granted on May 14, 2018. Victoria then filed a second motion for new trial, this time arguing that both Yekel and Stubbs rendered ineffective assistance by failing to adequately explain the plea offer in a manner that Victoria could understand. At the subsequent hearing concerning this second motion, only Victoria testified. Victoria did not contest the testimony from Yekel

7

given at the first hearing,[6] and Stubbs was deceased by that point. For this reason, there is no testimony from Stubbs regarding his representation of Victoria. On November 19, 2018, the trial court again denied Victoria's motion, finding that he had not proven deficient performance. And, again, the trial court credited the testimony of Yekel over that of Victoria.

The trial court did not err. As to Stubbs, Victoria has presented no evidence that the State ever conveyed the plea offer to Stubbs during his time as trial counsel. Instead, there is only testimony from Yekel that Victoria twice rejected the State's pretrial offer for a plea deal while Yekel was Victoria's counsel.[7] Moreover, to the extent that Victoria contends that a plea offer could have been presented to Stubbs, Victoria testified that Stubbs may have discussed that deal with him, but he could not remember that

---

[6] Victoria also conceded that Yekel had informed him about the plea offers in question.

[7] At one point, Victoria testified that he instructed Stubbs to accept the original plea deal *after* the jury had returned a verdict. But the only evidence credited by the trial court indicates that Victoria had rejected the potential plea offer prior to trial. There is no other evidence that any further offers were ever made.

discussion. So, Victoria has failed to present evidence to support his claim that Stubbs performed deficiently, especially given the trial court's credibility determinations. *Wright*, supra.

With regard to Yekel, the evidence and testimony credited by the trial court shows that Yekel presented the State's plea offer to Victoria and discussed alternatives with him, and that Victoria rejected the offer on two separate occasions prior to trial. Other than Victoria's own self-serving testimony that the trial court did not credit, there is no evidence that he did not originally understand the plea offer or that Yekel did not explain all of the details of the offer to him.[8] Victoria did not raise these specific arguments in his original motion for new trial, and he did not examine Yekel about them at the hearing on this first motion. Instead, Victoria waited until his second motion for new trial to raise such arguments, and, instead of calling Yekel to testify again, he simply stipulated to

---

[8] Victoria's own testimony is equivocal at best. For instance, he admitted that Yekel discussed the plea deal with him, but he did not remember the contents of that discussion. He also stated that Stubbs may have later discussed the deal with him, though he could not remember the details of that discussion, either.

Yekel's testimony from the first hearing. The result is that there is not enough evidence in the record to support Victoria's claim that Yekel did not sufficiently apprise Victoria of the nature and consequences of his plea. As a result, Victoria has not satisfied his burden of proving that either of his trial counsel performed deficiently. Id.

Moreover, even if Victoria could show deficient performance by either of his attorneys, he has also failed to satisfy the prejudice prong of *Strickland*. Although the 20-year plea deal offered by the State is less severe than the life sentence imposed after trial, and Victoria testified that he would have taken that deal, Victoria made no showing that "the prosecution would not have withdrawn it in light of intervening circumstances [and] . . . that the court would have accepted its terms." *Lafler v. Cooper*, supra, 566 U. S. at 164 (II) (B).[9]

---

[9] Indeed, in this case, the same trial court presided over Victoria's trial and considered both of his motions for new trial, and the trial court found below that Victoria "presented nothing on which this court can conclude that the trial court would have accepted [the] terms" of the plea deal.

10

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 5, 2019.

Murder. Toombs Superior Court. Before Judge Reeves.

*Zell & Zell, Rodney S. Zell*, for appellant.

*S. Hayward Altman, District Attorney, Jessica B. Wilson, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General*, for appellee.