**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 2, 2022**

# In the Court of Appeals of Georgia

A22A0567. JOHNSON v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Derek Alexander Johnson was convicted of and sentenced for[1] several crimes in connection with a fatal shooting during a drug sale: voluntary manslaughter, criminal attempt to sell marijuana, and possession of a firearm by a convicted felon. On appeal, Johnson argues that the trial court erred in seating four jurors after the state challenged Johnson's exercise of peremptory strikes. But contrary to his argument, the record shows that the trial court conducted the proper analysis and did not err in that ruling. Johnson also argues that the trial court

---

[1] Johnson was also convicted of felony murder, but the trial court merged that conviction into the voluntary manslaughter conviction for sentencing purposes, so the felony murder conviction is a nullity. See *Nazario v. State*, 293 Ga. 480 (746 SE2d 109) (2013).

improperly commented on the evidence while questioning two trial witnesses, but he did not object to the trial court's questions and he has not shown plain error. So we affirm.

1. *Ruling on peremptory strikes.*

After the state challenged Johnson's exercise of peremptory strikes as discriminatory based upon either race or gender, the trial court reseated four jurors. Johnson argues this decision was error. He contends that the trial court did not properly evaluate the state's challenge but instead combined steps of the applicable analysis, thereby impermissibly shifting the burden of persuasion to him and failing to determine if the state had proved discrimination. But as detailed below, the record shows otherwise.

"[I]t is unconstitutional for a prosecutor or defense counsel to exercise a peremptory challenge to a prospective juror because of the juror's race or gender." *Robinson v. State*, 278 Ga. 134, 135 (1) (598 SE2d 466) (2004). In *Batson v. Kentucky*, 476 U. S. 79, 89-98 (III) (106 SCt 1712, 90 LE2d 69) (1986), the United States Supreme Court set out a framework for evaluating whether a prosecutor's peremptory strikes were racially discriminatory, and that framework has been extended to strikes that discriminate as to gender and to strikes made by defense

2

counsel. See *J. E. B. v. Alabama*, 511 U. S. 127, 145-146 (V) (144 SCt 1419, 128 LE2d 89) (1994); *Georgia v. McCollum*, 505 U. S. 42, 59 (IV) (112 SCt 2348, 120 LE2d 33) (1992). Under that analytical framework,

> the trial court must engage in a three-step process to determine if the defendant's peremptory challenges were used in a racially discriminatory manner [or a manner that discriminated due to gender]. The opponent of a peremptory challenge must make a prima facie showing of racial [or gender] discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral [or gender-neutral] reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent. Although the burden of production shifts to the defendant if the [s]tate makes a prima facie case, the ultimate burden of persuasion as to discriminatory intent rests with — and never shifts from — the [s]tate.

*Edwards v. State*, 301 Ga. 822, 825 (2) (804 SE2d 404) (2017) (citations omitted).

The record shows that, in step one of this analysis, the state argued that the composition of the jury by race and gender did not resemble the composition of the group of prospective jurors, and the trial court found the state had made a prima facie case of racial and gender discrimination. Johnson did not challenge that finding at the time.

3

On appeal, he argues only that the state failed to perfect the record with regard to whether there was a prima facie case of discrimination. To the extent this argument concerns the appellate record it has no merit, because it is Johnson's burden, as the appellant, to show error affirmatively by the appellate record. See *Arnold v. State*, 198 Ga. App. 514, 516 (3) (402 SE2d 312) (1991). The decisions Johnson cites in support of this argument do not hold otherwise. Instead, those decisions are procedurally inapposite, because the appellants in those cases were the persons *challenging* the exercise of peremptory strikes and, as such, their burden of showing error by the appellate record included establishing a prima facie case of discrimination. See, e. g., *Shaw v. State*, 201 Ga. App. 438, 439-440 (1) (411 SE2d 534) (1991). But in any event, "[s]tep one of the inquiry is moot in the present case because [Johnson] tendered his purportedly race- [and gender-]neutral explanations for the peremptory strikes." *Harrison v. State*, 257 Ga. App. 718 (572 SE2d 4) (2002).

The record shows that the trial court then moved to step two, stating that "the burden shifts to the defendant to explain the striking[.]" This statement, in context, refers to Johnson's burden of production and does not support Johnson's argument that the trial court improperly imposed upon him a burden of persuasion. See *Edwards*, 301 Ga. at 825-826 (2) (a trial court's reference to the "burden" of the

4

proponent of peremptory strikes must be considered in context to determine if the trial court conducted the proper inquiry into the strikes).

At this point, the record shows that Johnson offered race- and gender-neutral explanations for the strikes. Johnson was "not required to enunciate an explanation that is persuasive, or even plausible. Rather, a neutral explanation means an explanation based on something other than the race [or gender] of the juror. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race [or gender] neutral." *Jackson v. State*, 265 Ga. 897, 898 (2) (463 SE2d 699) (1995) (citations and punctuation omitted). Johnson's explanations for striking the four jurors at issue satisfied this minimum requirement. Among other things, he noted that one had law enforcement experience and was a crime victim, one was a business owner and a crime victim, one was "a member of the country club crowd" whom Johnson's counsel thought would be "more law and order than the general citizenry," and one was an IT worker. These explanations were based on something other than the jurors' race or gender and were not inherently discriminatory.

The record shows that after Johnson's counsel offered race- and gender-neutral explanations for his strikes, the trial court asked the prosecutor if he wanted "to argue

5

that – the issues?" By doing so, the trial court "implicitly indicat[ed] that [he] was moving to step three [of the analysis]." *Edwards*, 301 Ga. at 825 (2). See also *Coleman v. State*, 301 Ga. 720, 724 (4) (804 SE2d 24) (2017). The prosecutor then argued to the trial court that the reasons given by Johnson's counsel for seven of the eight strikes were pretextual (including the four strikes at issue here), and Johnson's counsel interjected arguments for why the strikes were not pretextual. Ultimately, the trial court found that four of the challenged strikes were "an improper strike" and reseated those jurors over Johnson's objection. The trial court found that the other challenged strikes were proper.

We agree with Johnson that the record could be clearer. But "[w]e conclude . . . from the context and the entirety of the discussion that the trial court properly engaged in . . . step[ ] three [of the] analysis." *Dunn v. State*, 304 Ga. 647, 651 (2) (821 SE2d 354) (2018). Nothing in the record suggests that the trial court prematurely ended the analysis at step two by rejecting Johnson's explanations as not race- or gender-neutral. Compare *Jackson*, 265 Ga. at 898-899 (2) (trial court erred by prematurely evaluating the persuasiveness of the defendant's explanations as part of the trial court's decision that the explanations were not race-neutral); *Harrison*, 257 Ga. App. at 719 (same). To the contrary, the trial court moved into step three by

inviting the state to argue whether Johnson's proffered explanations were pretextual and by hearing both sides' positions on that issue. See *Edwards*, 301 Ga. at 825 (2); *Coleman*, 301 Ga. at 724 (4). Because "the trial court heard and considered the [s]tate's response [to Johnson's explanations before he] found [race and] gender discrimination[, t]he trial court did not end [his] analysis at step two [and he] did not shift the burden of persuasion to [Johnson]." *Tessmer v. State*, 273 Ga. 220, 225 (5) (539 SE2d 816) (2000).

> Where, as here,

> all three steps of the . . . analysis are completed and an explanation for the exercise of a peremptory strike is given, the trial court must ultimately decide the credibility of such explanation, and because the third step of the . . . procedure mandates that the trial court act as the trier of fact, the trial court's findings are to be given great deference and are to be affirmed unless clearly erroneous.

*Dunn*, 304 Ga. at 652 (2) (citation and punctuation omitted). In Georgia the clearly-erroneous standard is equivalent to the any-evidence standard. *Morrell v. State*, 313 Ga. 247, 251 (__ SE2d __) (2022). Johnson does not argue that the trial court's exercise of discretion in this regard was erroneous; instead, he argues that the trial court "failed to determine" whether the state had proved discriminatory intent.

7

But contrary to Johnson's position, the trial court was not required to make express findings on that point. A trial court's finding of pretext may be implicit, see *Daniels v. State*, 306 Ga. 559, 565-566 (2) (832 SE2d 372) (2019), and the "proffer of a pretextual explanation naturally gives rise to an inference of discriminatory intent." *Toomer v. State*, 292 Ga. 49, 55 (2) (b) (734 SE2d 333) (2012) (citation and punctuation omitted). See also *Coleman*, 301 Ga. at 723-724 (4) (holding that the trial court is not required to make an express finding as to whether purposeful discrimination in a jury strike was shown). So although the trial court did not clearly express his findings on the point, "the record indicates that the trial court in fact assessed the totality of the circumstances and found . . . discriminatory intent in [Johnson's] use of peremptory strikes [against the four reseated jurors], thereby completing the *Batson* inquiry. . . . We discern no clear error in this ruling." *Coleman*, 301 Ga. at 724 (4) (footnote omitted), citing *Wilburn v. State*, 230 Ga. App. 619, 623 (2) (497 SE2d 380) (1998) (physical precedent) ("[A]lthough a clearer record would allow us to rely less on implication and more on the actual findings of the trial court, based on this unclear record we cannot conclude that the trial court *clearly erred* in reseating the stricken jurors.") (emphasis in original).

2. *Trial court's comments on the evidence.*

Johnson argues that his conviction must be reversed because the trial court made two comments on the evidence that expressed or intimated the trial court's opinion on what had or had not been proved, in violation of OCGA § 17-8-57. Because Johnson did not object to the comments, we will review the claimed error only for "plain error which affects substantive rights of the parties." OCGA § 17-8-57 (b). This is so even though the trial occurred before OCGA § 17-8-57 (b)'s effective date. See *Roberts v. State*, 305 Ga. 257, 263 (4) n. 4 (824 SE2d 326) (2019) (plain error review established in OCGA § 17-8-57 (b) applies retroactively).

The challenged comments occurred during the testimony of two state's witnesses who described telephone conversations they had with Johnson in which he discussed the shooting. Johnson argues that questions posed to the witnesses by the trial court improperly implied that the trial court believed the telephone conversations about which the witnesses testified had in fact occurred.

In the first instance the trial court asked a question to clarify an exchange between the witness and the prosecutor:

> [The Prosecutor]: The defendant told you after he took – after [the victim] took the marijuana from his lap, that [the victim] attempted to run away and he hit him? Isn't that what defendant told you?

9

[The Witness]: Yes.

The Court: Who hit him?

The Witness: I guess [Johnson] hit him with his hands.

The Court: No, no. I'm not asking you to guess, but I want to know who the defendant said – who hit whom? [Johnson] hit [the victim], or [the victim] hit [Johnson]?

The Witness: To be honest, I don't remember like which way it went. I just remember something being said that – I'm not sure.

The Court: All right.

In the second instance the trial court asked several questions at the end of the witness's direct examination, including the following questions related to the witness's earlier testimony about Johnson's depiction of the shooting:

The Court: When you talked with Mr. Johnson on the phone, and he told you about this event that you testified to.

The Witness: Yes, sir.

The Court: Did he say if anybody else was with him in the car?

10

The Witness: Yes, sir. He said his home boy.

The Court: Do you know who that is?

The Witness: No, sir.

The trial court's questions to these witnesses were not improper. A "trial court may propound a clarifying question in order to develop the truth of a case without violating OCGA § 17-8-57. The extent of such questioning is a matter of the trial court's discretion, as long as the questioning does not intimate an opinion as to what has or has not been proved or as to the guilt of the accused." *State v. Nickerson*, 324 Ga. App. 576, 578-579 (1) (749 SE2d 768) (2013) (citation omitted). The transcript of the questions in this case indicates that, taken in context, the questions "were interposed to develop the truth and to clarify the witnesses' testimony[.]" Id. at 580 (1). The questions "were entirely objective, did not suggest any particular answer to the witness[es], and related to the events [about which the witnesses had just testified]." *Curry v. State*, 283 Ga. 99, 102 (4) (657 SE2d 218) (2008). While the questions referred to portions of that testimony, the questions did not imply that the trial court did — or did not — believe those witnesses were telling the truth about having spoken to Johnson. Compare *Alexander v. State*, 294 Ga. 345, 348 (3) (751

11

SE2d 408) (2013) (finding no violation of OCGA § 17-8-57 when the trial court posed questions "for the purpose of clarifying [a] witness' testimony concerning her prior statement and did not express or intimate an opinion regarding the credibility of the evidence being offered") with *State v. Anderson*, 287 Ga. 159, 160-161 (1) (695 SE2d 26) (2010) (finding that the trial court's questioning of a witness was an expression of opinion that venue had been proven in violation of OCGA § 17-8-57 when the trial court, after asking a witness about the location of a store at which a fraudulent credit card transaction allegedly occurred, stated "I just wanted to make sure").

For these reasons, "we conclude that the trial court's questions fell within the court's discretion to ask questions to develop the truth of the case." *Curry*, 285 Ga. at 102 (2). "Because there was no error, there was per force no plain error warranting reversal." *Crenshaw v. State*, 341 Ga. App. 406, 409 (801 SE2d 92) (2017).

*Judgment affirmed. Gobeil and Pinson, JJ., concur*.