304 Ga. 647
FINAL COPY

S18A1284. DUNN v. THE STATE.

BOGGS, Justice.

In August 2012, a jury found Justin Eric Dunn guilty of malice murder, felony murder, armed robbery, aggravated assault, and three counts of possession of a firearm during the commission of a felony in connection with the shooting death of Marquette Maurice Woods, armed robbery of Ricarlos Butler, and aggravated assault on Ruben Johnson.[1] Dunn was sentenced to life imprisonment plus 55 years. His amended motion for new trial was denied. He

---

[1] The crimes occurred on June 16, 2011. On March 27, 2012, a Richmond County grand jury indicted Dunn, his brother Rodriquez Dontrey Dunn, and Detrich D'Antonio Cooper for malice murder, felony murder, armed robbery, aggravated assault, and three counts of possession of a firearm during the commission of a felony in connection with victims Woods, Butler, and Johnson. The indictment also included charges of criminal attempt to commit armed robbery, aggravated assault, and possession of a firearm during the commission of a crime against Dunn alone, involving a fourth victim, Javor Williamson. Those three counts were the subject of a motion to sever, which was denied. The State, however, decided not to try Dunn on those three charges, the jury did not receive them or hear evidence about them, and they were dead docketed at sentencing. Dunn was tried alone before a jury from August 6-9, 2012. The jury found Dunn guilty on all remaining counts, the felony murder charge was vacated by operation of law, and the court sentenced Dunn to life imprisonment plus 55 years. Dunn filed a motion for new trial on August 30, 2012 and an amended motion for new trial on January 15, 2016. The amended motion for new trial was denied on February 14, 2018, Dunn's notice of appeal was filed on March 1, 2018, and the case was docketed in this Court for the August 2018 term. The case was submitted for decision on the briefs.

appeals, asserting as his sole enumeration that the trial court erred in granting the State's challenge to a defense jury strike pursuant to Georgia v. McCollum, 505 U. S. 42 (112 SCt 2348, 120 LE2d 33) (1992).[2] For the reasons stated below, we affirm.

Sufficiency of the evidence is not enumerated as error, but the evidence at trial, viewed in the light most favorable to the jury's verdict, showed that Johnson acknowledged that he and Woods were in the business of dealing drugs from a house on Aragon Drive in Richmond County. On the day of the incident, Dunn's brother, Rodriquez Dontrey Dunn ("Trey"), called Johnson seeking to purchase an ounce of crack cocaine. Later in the day, Dunn, Trey, and Detrich D'Antonio Cooper arrived at the house, where they remained in the kitchen until Johnson went to the refrigerator to get a beer. Cooper then grabbed Johnson from behind and pointed a chrome pistol in his face. Woods said something, and Johnson heard a shot. At about the same time that Cooper drew his pistol, Johnson's brother, Butler, who had stopped by to visit Johnson, saw Dunn pull a "high powered automatic weapon" out of his pants. The other two individuals

---

[2] In McCollum, the test announced in Batson v. Kentucky, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), was extended to peremptory juror challenges made by criminal defendants. It has sometimes been termed a "reverse Batson" challenge. See Culver v. State, 314 Ga. App. 492, 493 (1) (724 SE2d 485) (2012).

then robbed Butler. Johnson struggled with Cooper and then escaped out the back door of the house. After Johnson heard four or five more shots, Butler emerged from the house calling for Johnson and saying that Woods had been shot. The shot pierced Woods' pulmonary artery and vein and shattered one of his vertebrae, causing his death. Dunn, Trey, and Cooper fled the scene; shots were fired from their car as they drove away. Butler identified Dunn as the individual who shot Woods, and Johnson's girlfriend, who was also present, recognized Dunn as one of the men involved in the shooting.

Though Trey was the only person Johnson knew, he was able to determine the identity of Trey's companions through Trey's Facebook page. Approximately a month after the shooting, a Richmond County deputy stopped a car occupied by Dunn. He observed Dunn and another man attempting to conceal something behind the back seat. A later search revealed that the object was a 9mm pistol. A forensic examiner testified that, based upon the examination of shell casings, that pistol was fired at the scene of Woods' murder. Upon his arrest, Dunn gave a false name, and, when his bedroom was searched with his mother's permission, police found various types of ammunition, including 9mm rounds, a Georgia ID in Cooper's name, and digital

3

scales.

1. Although Dunn has not raised the sufficiency of the evidence in his appeal, we hold that the evidence was sufficient to support Dunn's convictions under Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error, Dunn asserts that the trial court erred in seating panel member Number 28 on the jury over Dunn's peremptory strike, based on the State's objection pursuant to McCollum, supra.

> In McCollum, the Supreme Court of the United States held that defendants are prohibited from engaging in purposeful racial discrimination in the exercise of peremptory strikes. When the State raises a McCollum objection, the trial court must engage in a three-step process to determine if the defendant's peremptory challenges were used in a racially discriminatory manner. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent. Although the burden of production shifts to the defendant if the State makes a prima facie case, the ultimate burden of persuasion as to discriminatory intent rests with — and never shifts from — the State.

(Citations and punctuation omitted.) Edwards v. State, 301 Ga. 822, 824-825 (2) (804 SE2d 404) (2017). "In reviewing a trial court's McCollum ruling, we afford deference to the [trial] court's findings and affirm them unless they are clearly erroneous." Id. at 826 (2).

4

After voir dire and the selection of a jury, the State raised an objection.

The jury was excused, and the trial court proceeded:

> COURT: All right, your challenge, Ms. Easterling.
>
> MS. EASTERLING [ADA]: Yes, sir. The State is challenging the defendant's jury strikes on the basis of McCollum. The initial 39 jurors, 71 percent were black, which is 28 jurors; the remaining 11 . . . were white, which is 29 percent. Now, . . . the defendant used 55 percent of their strikes to strike white jurors in the case, Your Honor, resulting in a one hundred percent black . . . jury, and excluding alternates. And it's our position that the defense has systematically used their strikes to eliminate Caucasian jurors from the jury panel.
>
> COURT: Okay. What say ye?
>
> MS. EASTERLING: We are requesting a race neutral reason for each of their strikes, Your Honor.

Defense counsel reviewed her notes on each of the panel members struck by the defense, explaining her reasons for the strikes. With respect to panel member Number 28, a white female, the following exchange occurred:

> MS. HIX [defense counsel]: Your Honor, I didn't believe that she — she's extremely young. I just didn't believe that she could understand my client's perspective and the nature of this kind of case.
>
> COURT: Okay. Next?
>
> MS. EASTERLING: Your Honor, we take issue with Number 28. That is not a race neutral reason.
>
> COURT: I'm going to come back to that. Let's go.
>
> DEPUTY CLERK: That's all the strikes, sir.
>
> COURT: That's all the strikes? I'm going to find your reasoning was race neutral on Number 6 . . . race neutral on [Number 11]; race neutral on [Number 25], but not so on [Number 28].

MR. WHITE [ADA]: Your Honor, the reason we don't believe that it's a race neutral reason is the defense allowed [panel member] Number 14, who's 21 years old, a black female, to sit on the jury while using that strike to —

COURT: For which one now?

MR. WHITE: Ms. Hix offered as a race neutral reason for striking [Number 28] —

COURT: [Number 28] is going to serve.

MR. WHITE: I understand, Judge. We want to put on the record the reason we don't believe it's race neutral is that the defense allowed [Number 14], who is a black female, who has a listed age of 21 years to sit on the jury and then offered as a race neutral reason the age of someone who is two years her senior.

MS. HIX: Your Honor, if I can respond to that. [Number 28] works at a credit union. She has a completely different life experience than a person who works in a fast food restaurant. And I believe that her life experience would make it so that she would not be able to understand the circumstances of this case, which are extremely — it's extremely important that the jury understand what was going on in that house and the circumstances of both the decedent and the defendant.

COURT: I think all of your reasoning —

MS. HIX: This is a drug deal —

COURT: All of your reasons thus far were race neutral except for that juror.

MS. HIX: Yes, Your Honor. That would — if you seat [Number 28], that would leave me with having only struck eight. If your Honor finds that that wasn't a race neutral reason, I believe it was a race neutral reason. I believe that [Number 28] would not be able to understand the circumstances surrounding this case, given the type of work that she does and her age.

COURT: I'm going to place her on the jury . . . .

Dunn concedes that the State presented a prima facie showing of racial discrimination, satisfying step one of the McCollum test. He contends, however,

6

that the trial court failed to consider step three of the test, and improperly found in step two of the analysis that his explanation was not race-neutral. It is apparent from the transcript that both the State and Dunn, as well as the trial court, incorrectly employed the term "race-neutral" throughout the discussion surrounding the seating of Juror Number 28. We conclude, however, from the context and the entirety of the discussion that the trial court properly engaged in a step-three McCollum analysis. During that third-step analysis, the State made a showing of discriminatory intent, and the trial court then rejected Dunn's alternative explanation for the strike as pretextual.

While the trial court did not expressly indicate that it was moving to step three of the McCollum analysis, we do not look merely at the nomenclature used during a colloquy, but at the totality of the discussion, including the trial court's inquiry. "[W]e don't read statements in isolation; we read them in context. [Cit.]" Edwards, supra, 301 Ga. at 825 (2). Dunn's initial explanation, that the prospective juror was "extremely young," is a race-neutral reason. Walker v. State, 281 Ga. 521, 522 (3) n. 4 (640 SE2d 274) (2007) (prospective jurors 21 and 22 years of age). While the trial court initially appeared to conclude, incorrectly, that Dunn's first explanation was not facially race-neutral, one of

the prosecutors interjected and insisted that facts be "put on the record" to support the State's contention that the explanation, while facially race-neutral, was made with discriminatory intent. Defense counsel then responded, offering a second and different explanation for the strike. The trial court then declared, "I'm going to place her on the jury."

Viewed in context, it is apparent that the trial court, albeit at the State's urging, moved beyond the step two determination of neutrality, heard the prosecutor's and defense counsel's arguments with regard to Dunn's explanation, and concluded that the explanation was pretextual and made with discriminatory intent. The use by the State and the trial court, as well as defense counsel, of the term "race-neutral" in the discussion of whether Dunn's stated reason for the strike was pretextual is not dispositive. "The fact that the trial court used the term 'race neutral' in its ultimate findings — a term generally used in connection with the second McCollum step — does not alter our conclusion that the court properly conducted the McCollum inquiry." Edwards, supra, 301 Ga. at 825-826 (2); see also Coleman v. State, 301 Ga. 720, 723-724 (4) (804 SE2d 24) (2017) (in Batson analysis, trial court "implicitly engaged in the third step" by hearing from both sides and ruling, and use of term "race-

8

neutral" was not dispositive).

When all three steps of the McCollum analysis are completed and an explanation for the exercise of a peremptory strike is given, "the trial court must ultimately decide the credibility of such explanation, and because the third step of the McCollum procedure mandates that the trial court act as the trier of fact, the trial court's findings are to be given great deference and are to be affirmed unless clearly erroneous. [Cit.]" Stokes v. State, 281 Ga. 825, 829 (3) (642 SE2d 82) (2007). Viewed in this light, the trial court did not clearly err in rejecting defense counsel's explanation for the strike as pretextual, particularly given the fact that counsel ultimately offered a different explanation than the one she originally provided. See Rose v. State, 287 Ga. 238, 240-241 (2) (695 SE2d 261) (2010) (noting defense counsel's changing explanation of strike). In determining whether a strike is pretextual, the trial court, which can directly evaluate an attorney's credibility and whether discriminatory intent is present, "should focus on the genuineness of the explanation, rather than its reasonableness." (Citation omitted.) Id. at 241 (2).

Judgment affirmed. All the Justices concur.

Decided November 5, 2018.

Murder. Richmond Superior Court. Before Judge Blanchard.

McMillan & Rawlings, Michael S. Howard, for appellant.

Natalie S. Paine, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.