**June 12, 2019**

# In the Court of Appeals of Georgia

A19A0322. AIKG, LLC v. MARSHALL.

MILLER, Presiding Judge.

In this civil action, Tanisha Marshall sued AIKG, LLC, alleging negligence in the operation of its indoor go-kart facility where Marshall sustained serious bodily injuries from a crash while operating a go-kart. Following a jury verdict and judgment in Marshall's favor, AIKG, LLC appeals. In its sole enumeration of error,[1] AIKG argues that the trial court erred in granting Marshall's *Batson*[2] challenge to the use of its peremptory strikes. For the reasons that follow, we affirm.

---

[1] In its reply brief to this Court, AIKG withdrew the second enumeration of error regarding the trial court's denial of its motion for directed verdict concerning its assumption of risk affirmative defense. At oral argument, AIKG confirmed that it had abandoned that enumeration.

[2] *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LEd2d 69) (1986).

The record shows that Marshall filed a complaint against AIKG after sustaining injuries from a crash while operating a go-kart at AIKG's facility, and the case proceeded to trial. During voir dire, Marshall raised a *Batson* challenge regarding AIKG's use of its peremptory strikes. Marshall argued that of the twenty-five members of the jury pool, fifteen were Caucasian and ten were African-American, and of the ten African-American prospective jurors, only three of those jurors were selected. The trial court noted that all of the strikes used by AIKG were against African-Americans, and directed AIKG to respond to Marshall's *Batson* challenge.

AIKG began its response by noting that it had not used all of its peremptory strikes and had one strike remaining. AIKG then provided explanations for each of its strikes. As to the first strike, AIKG's counsel explained,

> So my first strike was Number 11. This was a retired gentlemen and in my experience I typically do not like retirees, no matter what their background is. I find that they, I don't know if it's from daytime television or what, but in my experience retirees have not been particularly good defense jurors.

As to the second strike, AIKG's counsel said,

> Number 13, . . . we didn't learn that much information from [Juror 13]. The only note that I have written down about [Juror 13] was that she

2

commented during [Mr.] Hoffspiegel's voir dire that when people drive too fast, it can lead to great injuries or death.

Mr. Hoffspiegel, as I saw a preview of his case yesterday, during opening statements, the case that we mistried is going to be spending a great deal of time, I think, in this case discussing speed, which is why I noted that, and which is why I struck Juror Number 13.

As to the third strike, AIKG's counsel explained,

Juror Number 14, . . . -- Oh, she's also -- She didn't have -- [Juror 13] and [Juror 14] were the two ladies that were seated side by side and neither one of them offered us much information to glean about them despite Mr. Hoffspiegel's fairly extensive voir dire and the only thing that I wrote down with her is that she had a pretty visceral reaction to one of the questions during Mr. Hoffspiegel's examination, which was that she was very, very, very adamant about seatbelt usage and seemed to indicate that she thought that seatbelts would basically prevent any sort of injury.

Regarding the fourth strike, AIKG's counsel stated,

Number 17 was a juror that I actually followed up on because he said something during Mr. Hoffspiegel's questioning that caused me a little bit of concern and that was that, if you don't follow the rules, people get hurt, and again having access to having heard Mr. Hoffspiegel's opening statement yesterday, and frankly his voir dire both days, I know that this

3

is going to be a safety rule case and he's going to allege there were multiple violations of safety rules.

As to the fifth strike, AIKG's counsel elaborated,

> Let's see, the last juror that I struck, [Juror 23]. Again we didn't learn a lot about [Juror 23], but the one thing that I wrote down about [Juror 23] was that, businesses should make sure that people cannot get hurt, and that is a direct quote from her during the voir dire process. That's why I chose to strike [Juror 23] and that's the end of my strikes for the jury. As to the strike of a juror on the alternate panel, AIKG's counsel explained,

> So with the alternate knowing that we basically had those three jurors to choose from, I looked at that and compared the jurors against one another and, frankly, the fact that I had the opportunity to have a younger male, who I thought might frankly understand go karting a little bit better than an older lady, that's why I wanted to use my strike on her to hopefully get the younger guy.

After AIKG's counsel gave the reasons for the strikes, the trial court initially ruled that AIKG improperly exercised all of its peremptory strikes with the exception of its fourth strike against Juror 17. Specifically, as to the first strike, the trial court stated, "[t]he retiree, I do not find that to be a race-neutral reason for striking someone

4

because they are retired. So I will put that juror back in the pool." The trial court continued,

> As it relates to Juror Number 13 and 14, . . . both being [African]-American women, where defense attorney has stated, did not offer much information on either, but the first one the reason being that the juror commented, that great injuries and death when you drive too fast [sic]. And the other juror the reason given was they made a comment as it relates to Plaintiff's question about seatbelts and them saving people. I do not find either of those reasons to be race-neutral. Seatbelts, jurors, appears to be pretexts for Jurors 12, 13 and for the retiree juror, that was Juror Number 11.

Regarding Jurors 23 and 30, the trial court stated,

> Juror Number 23, defense asserted, not a lot about [Juror 23] either -- businesses should make sure that the place is safe for their people and I find that is not a race-neutral reason, since not much information was gathered and it appears to be that any comment or any statement that these jurors made was given as a pretext for a reason to strike them since not that much dialog was taken from them.

> . . .

> Juror Number 30, . . . reason indicated that -- Juror Number 30 indicated that the reason the juror was taken because there were the alternate choices, there were younger jurors and they may know more about race cars and go karts. And I guess, if I looked at the other jurors, who may

5

have been selected, I guess in looking at the ages of the jurors, this juror was born in 1987. And the juror that was struck was born in 1960. And so if I look at Juror Number 7, . . . who was a white female, she was born in 1957. If I looked at another Juror Number 9, . . . he was born in 1959. So when looking at those two jurors, who have aged, they're varying ages on there, but I find that is not a race-neutral reason considering that there are other jurors who are as old or older, so seat the juror.

The trial court took a brief recess after its initial ruling on Marshall's *Batson* challenge.[3] After reconvening, the trial court directed Marshall to respond to AIKG's arguments concerning its reasons for the strikes. After Marshall's pretext arguments, the trial court upheld its initial ruling, stating,

[B]ased upon the fact that race neutral reasons were not given; based upon the fact that several of the jurors, namely . . . Jurors Number 11, Juror Number 13, Juror Number 14 and Juror Number 30 and Juror Number 33,[4] were asked few, if any, questions. And the questions, the limiting or the lack of questioning or the lack of meaningful questioning, is one of the reasons that I considered in striking the jurors -- I'm sorry

_____

[3] Prior to the recess, the trial court heard arguments on AIKG's *Batson* challenge to Marshall's strikes, which the trial court denied.

[4] Although the trial court referred to Juror 33, it appears that the trial court misspoke and meant to reference Juror 23.

in reseating the jurors and indicating that the reasons given by the defense were not race neutral reasons. Based upon the strikes that the defense made, it was an overwhelming pattern of strikes against African-Americans and reasons are previously given not a lot of meaningful questioned [sic] asked by them.

If we look at the jury list that has been submitted and the jurors who were chosen, the parties had six strikes each. The Plaintiff used four of their strikes and the Defendant used five of their strikes. Based upon the jurors, who were struck for cause, the parties, if they had used all of their strikes, would have gone to Number 29 [s]ince the plaintiff only used four, the defense used five, they stopped at Number 25. But in looking at the jury sheet another factor that I considered, the defense had another strike, which would have been Juror Number 27, and Juror Number 27, being an African-American, was struck by the defense but it was crossed through because they realized, the parties realized, they did not need to go past 25 because they would have had 12 jurors. So if I take all of that information, put it together and come up with an explanation as to why the jurors should be seated, it was overwhelmingly that the reasons given were not race neutral. Few, if any, questions were asked and it was overwhelmingly a number of African-Americans that were struck.

The case proceeded to trial and the jury returned a verdict in Marshall's favor. The jury allocated 64 percent of the fault to AIKG, 24 percent of the fault to the driver who crashed into Marshall, 12 percent of the fault to Marshall, and awarded $2

7

million in damages. The trial court subsequently entered its judgment in Marshall's favor. This appeal followed.

AIKG contends that the trial court conducted an improper *Batson* analysis by finding pretext at step two of the *Batson* test and by failing to analyze whether Marshall proved discriminatory intent as required under *Batson*'s third step. We are unpersuaded.

In *Batson*, the United States Supreme Court barred the government from striking prospective jurors from the jury panel on the basis of race. *Ultra Telecom, Inc. v. Merchant*, 328 Ga. App. 230, 232 (761 SE2d 623) (2014). See also *Batson*, supra, 476 U. S. at 84. In *Edmonson v. Leesville Concrete Co.*, 500 U. S. 614 (111 SCt 2077, 114 LEd2d 660) (1991), the Supreme Court extended its holding in *Batson* to civil cases. *Ultra Telecom*, supra, 328 Ga. App. at 232. Establishing a *Batson* violation requires satisfaction of a three-prong test: "(1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent." (Citation omitted.) Id.

[I]n reviewing the trial court's disposition of *Batson* motion, we must bear in mind that the trial court's decision rests largely upon assessment of the proponent's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. Thus, the trial court's findings as to whether the opponent of the strike has met the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous.

(Citations and punctuation omitted.) *Ultra Telecom*, supra, 328 Ga. App. at 232-233. With these guiding principles in mind, we turn to the facts surrounding AIKG's claim of error.

As AIKG concedes, a similar legal issue to the one raised here was also raised in *Dunn v. State*, 304 Ga. 647 (821 SE2d 354) (2018). In *Dunn*, the trial court heard the State's argument of a prima facie case for its *McCollum*[5] challenge, which requires proof of the same elements for a *Batson* challenge. Id. at 649 (2). After the trial court heard the defense's race-neutral arguments, the trial court ruled that one juror was improperly struck from the jury. Id. at 649-650 (2). After the trial court's initial ruling, the State provided additional arguments as to why the defense's reason

---

[5] In *Georgia v. McCollum*, 505 U.S. 42 (111 SCt 2348, 120 LE2d 33) (1992), the United States Supreme Court extended *Batson* to challenges made by the government, and prohibited criminal defendants from exercising peremptory strikes in a racially discriminatory manner.

for the strike, although facially race-neutral, was pretext. Id. The trial court subsequently upheld its initial ruling and seated the improperly struck juror. Id. at 651 (2). Dunn argued on appeal, as AIKG argues here, that "the trial court failed to consider step three of the [*Batson*] test, and improperly found in step two of the analysis that his explanation was not race-neutral." Id.

In rejecting Dunn's argument, our Supreme Court reasoned that "[w]hile the trial court did not expressly indicate that it was moving to step three of the *McCollum* analysis, we do not look merely at the nomenclature used during a colloquy, but at the totality of the discussion, including the trial court's inquiry." *Dunn*, supra, 304 Ga. at 651 (2). The Supreme Court noted that "[w]e don't read statements in isolation; we read them in context." (Citation and punctuation omitted.) Id. The Court noted that while the trial court incorrectly ruled that Dunn failed to articulate a race-neutral reason for his strike, the trial court subsequently heard argument from the State as to why the defense's reason for the strike was pretext. Id. at 650-651 (2). The Court further recognized that after the State's pretext argument, the trial court "concluded that the explanation was pretextual and made with discriminatory intent." Id. Thus, the Court held that, in light of the totality of the discussions, the trial court conducted

10

the proper *McCollum* inquiry, and the Court affirmed the trial court's finding of purposeful discrimination. Id. at 651-652 (2).

Here, as in *Dunn*, the trial court heard Marshall's argument of a prima facie case of purposeful discrimination in AIKG's exercise of its peremptory strikes, as well as AIKG's race-neutral explanations for its strikes. Like *Dunn*, after AIKG proffered its race-neutral explanations for its strikes, the trial court initially incorrectly found pretext in AIKG's exercise of its strikes. However, like the State in *Dunn*, Marshall supplied arguments prior to the trial court's final ruling that AIKG's explanations for the strikes, although facially race-neutral, were pretext.

Accordingly, under *Dunn*, AIKG's contention that the trial court erred by conducting an improper *Batson* inquiry must fail. While the trial court did not expressly state that it was moving to the third step of the *Batson* analysis, we look at "the totality of the discussion, including the trial court's inquiry" as instructed by our Supreme Court. *Dunn*, supra, 304 Ga. at 651 (2). In reviewing the totality of the discussion, we determine that the trial court heard argument from both Marshall and AIKG prior to the trial court's ultimate ruling regarding purposeful discrimination. Thus, the trial court conducted a proper *Batson* inquiry. Id. at 651-652 (2). The fact that the trial court used the term "race-neutral" in the discussion as to whether

11

AIKG's strikes were pretextual is not dispositive and does not alter our conclusion. See id. at 651 (2) ("The use by the State and the trial court, as well as defense counsel, of the term 'race neutral' in the discussion of whether Dunn's stated reason for the strike was pretextual is not dispositive."); *Coleman v. State*, 301 Ga. 720, 723-724 (4) (804 SE2d 24) (2017) (stating that the trial court's use of the term "race-neutral" was not dispositive, and that the trial court "implicitly engaged in the third step" of *Batson* by hearing from both sides prior to the final determination of purposeful discrimination). Furthermore, AIKG's argument that reversal is required because the trial court failed to make "individualized findings" regarding Marshall's pretext arguments also fails. See *Dunn*, supra, 304 Ga. at 649-652 (2) (trial court merely concluding that the State's reasoning was pretextual, and that the juror would be seated). Moreover, this Court has previously rejected the argument that a trial court conducts an improper *Batson* inquiry by failing to make express findings regarding a party's pretext argument. See *York v. State*, 242 Ga. App. 281, 290 (4) (b) (528 SE2d 823) (2000) ("Appellants also contend that the trial court did not complete the 'three step process,' because the court failed to make a separate determination on the record that the defense had failed to prove discriminatory intent. This determination,

however, was implicit in the trial court's denial of the *Batson* motion and does not require a separate, specific finding on the record.").

When all three steps of the *Batson* inquiry are completed and the explanations for the peremptory strikes are given, "the trial court must ultimately decide the credibility of such explanation, and because the third step of the [*Batson*] procedure mandates that the trial court act as the trier of fact, the trial court's findings are to be given great deference and are to be affirmed unless clearly erroneous." (Citation omitted.) *Dunn*, supra, 304 Ga. at 652 (2). "In determining whether a strike is pretextual, the trial court, which can directly evaluate an attorney's credibility and whether discriminatory intent is present, should focus on the genuineness of the explanation, rather than its reasonableness." (Citation and punctuation omitted.) Id. Additionally, although AIKG contends that the failure to ask few or any questions of the stricken jurors is not relevant in determining discriminatory intent, other courts have noted otherwise. Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have noted that disparate questioning or the failure to question stricken jurors are factors a trial court *can* consider in adjudicating a *Batson* claim. See *Miller-El v. Dretke*, 545 U. S. 231, 266 (125 SCt 2317, 162 LE2d 196) (2005) (stating that the State's "strikes correlate[d] with no fact as well as they correlate[d]

13

with race, and they occurred during a selection infected by shuffling and disparate questioning that race explains better than any race-neutral reason advanced by the State."); *Madison v. Commr. Ala. Dept. of Corrections*, 761 F3d 1240, 1252 (11th Cir. 2014) (noting that among the relevant factors supporting Madison's *Batson* claim was the prosecutor's failure to question three of the stricken jurors).

Given that all of the stricken jurors were African-American, as well as the trial court's finding of AIKG's admission that it did not "glean" information from several of the stricken jurors, the disparate or lack of questioning of the stricken jurors, and AIKG's striking of an African-American juror on the alternate panel, the trial court did not clearly err in finding purposeful discrimination in AIKG's use of its peremptory strikes. Accordingly, we affirm the trial court's ruling granting Marshall's *Batson* challenge.

*Judgment affirmed. Reese and Gobeil, JJ., concur.*