306 Ga. 559
FINAL COPY

S19A0695.  DANIELS v. THE STATE.

PETERSON, Justice.

Tobias Daniels appeals his convictions for malice murder and

other crimes related to the 2015 shooting death of Mikell Wright and

attempted robbery of Mikell's brother, Rodregus Wright.[1] Daniels

challenges the sufficiency of the evidence as to the crimes against

Mikell and argues that the trial court erred by sustaining the State's

---

[1] The crimes occurred on May 31, 2015. Daniels was indicted along with Zykieam Redinburg and Antonio Griffin for malice murder, felony murder, armed robbery of Mikell Wright, and attempted armed robbery of Rodregus Wright; Redinburg and Griffin also were charged with possession of a firearm during the commission of a felony. Redinburg accepted a plea offer and testified for the State at the joint trial of Daniels and Griffin, held from August 28 to September 1, 2017. The jury found Daniels guilty of malice murder, felony murder, attempted armed robbery of Mikell Wright (as a lesser included offense of armed robbery), and attempted armed robbery of Rodregus Wright. (Griffin was found guilty of those offenses but not guilty on the firearm possession count.) On September 29, 2017, Daniels was sentenced to serve life for malice murder, ten years concurrent for the attempted armed robbery of Mikell Wright, and ten years (to serve five) for the attempted armed robbery of Rodregus Wright, consecutive to the malice murder sentence; the felony murder count was vacated by operation of law. Daniels filed a motion for new trial on October 3, 2017; the motion was amended by appellate counsel on June 15, 2018. The trial court denied the motion in an order filed on December 18, 2018. Daniels filed a timely notice of appeal, and the case was docketed to this Court's April 2019 term and submitted for decision on the briefs.

challenge to two of Daniels's peremptory strikes and by failing to apply the rule of lenity in sentencing him for criminal attempt to commit armed robbery instead of aggravated assault. We conclude that the evidence was sufficient to support Daniels's convictions, that the trial court did not commit reversible error in rejecting two of Daniels's peremptory strikes, and that the trial court did not err in sentencing Daniels for attempted armed robbery instead of aggravated assault.

The trial evidence in the light most favorable to the verdicts shows as follows. On May 31, 2015, a group of teenagers, including brothers Rodregus and Mikell Wright, proceeded toward a Chatham County apartment complex. Mikell went to the home of the "candy man" just outside the complex to buy a lighter, while Rodregus pedaled his bicycle into the complex with Zyonnia Grant riding on the front.

Antonio Griffin, Zykieam Redinburg, and Daniels were at the apartment complex, and, "after talk[ing] to some girls," together they made a plan to rob Rodregus. Griffin, Redinburg, and Daniels

2

approached Rodregus and Grant, who both were still on Rodregus's bike. Griffin, Redinburg, and Daniels each had something covering part of their faces but were still recognizable. Redinburg pulled out a gun, pointed it at Rodregus's head, and ordered him to empty his pockets. Daniels, who also had a gun, went through Rodregus's pockets and said "go through his pockets" or "check his socks." The group was unable to obtain anything from Rodregus, who rode off on his bike, calling out to his brother.

Still wearing face coverings, Daniels, Redinburg, and Griffin then walked toward the home of the "candy man" with plans to rob Mikell. Upon encountering Mikell, Daniels and Redinburg both brandished a gun at him. The group was unable to obtain anything of value from Mikell and began to walk away from him. Mikell called after the group, questioning their actions. Daniels handed a gun to Griffin, who shot Mikell several times. Daniels then proceeded to run to his grandmother's house, while his associates ran in different directions. Mikell died of gunshot wounds.

1. Daniels argues that the State failed to present sufficient

evidence to prove Daniels guilty beyond a reasonable doubt of the offenses against Mikell. We disagree.

Challenging the sufficiency of the evidence as to his conviction for attempted armed robbery of Mikell, Daniels argues that the evidence failed to prove that he shared with Griffin a common criminal intent to rob Mikell. Under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be . . . convicted of commission of the crime."

> Mere presence at the scene of the crime and mere approval of a criminal act are insufficient to establish that a defendant was a party to the crime, and proof that the defendant shares a common criminal intent with the actual perpetrators is necessary. But such shared criminal intent may be inferred from the defendant's conduct before, during, and after the crime.

*Thomas v. State*, 296 Ga. 485, 488 (1) (769 SE2d 82) (2015) (citations and punctuation omitted). In addition, "[t]he testimony of an accomplice must be corroborated to sustain a felony conviction." *Yarn v. State*, 305 Ga. 421, 423 (2) (826 SE2d 1) (2019) (citing OCGA § 24-14-8). But the corroborating evidence "need not of itself be sufficient to warrant a conviction of the crime charged," and "[s]light

4

evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict." Id. (citations and punctuation omitted).

Here, Redinburg — an accomplice whose testimony required corroboration — testified that his group headed toward Mikell "[t]o rob him." And only Redinburg testified that Daniels brandished a gun when they approached Mikell. But there was evidence apart from this testimony from which the jury could infer that Daniels was a participant in the attempted armed robbery of Mikell. Multiple witnesses besides Redinburg identified Daniels as part of the group that approached Rodregus, with Redinburg pointing a gun at Rodregus. Rodregus and Grant testified that Daniels had his face partially covered, and Rodregus testified that Daniels directed one of his associates to check Rodregus's pockets or socks. Grant, who had been riding with Rodregus on his bike, testified that after the group was unable to obtain anything from Rodregus, another girl reported that Mikell had money; at that point, Daniels proceeded

with the group in the direction of Mikell. There was also evidence —

a statement to police by a witness other than Redinburg — that the

members of the group still had their faces covered even after the

shooting of Mikell. This was sufficient to corroborate Redinburg's

testimony that Daniels participated in the attempted armed robbery

of Mikell. And Redinburg's testimony in particular supported a

conclusion that Daniels shared a criminal intent to rob Mikell.

Viewing the evidence in the light most favorable to the verdicts, as

we must, see *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781,

61 LE2d 560) (1979), the evidence was sufficient to authorize a jury

to find Daniels guilty of the attempted armed robbery of Mikell. See,

e.g., *Stewart v. State*, 299 Ga. 622, 626-627 (2) (c) (791 SE2d 61)

(2016) (finding sufficient evidence from which jury could infer

appellant acted with a shared criminal intent to rob, where

appellant was present for discussion about robbing a particular drug

dealer, proceeded to the victims' rooms with others as part of that

plan, "perhaps" was armed with a gun, ran away with other

perpetrators, and took part in dividing up the proceeds of the

6

robbery).

Daniels also argues that the evidence was insufficient to support his malice murder conviction, because there was no evidence to corroborate Redinburg's claim that Daniels aided or abetted the murder of Mikell by handing Griffin the murder weapon and no evidence that Daniels shared Griffin's malice aforethought. But there was evidence apart from Redinburg's testimony from which the jury could infer that Daniels was a participant in the murder of Mikell. Rodregus, Grant, and another eyewitness testified that Redinburg pointed a gun at Rodregus when Redinburg, Griffin, and Daniels attempted to rob him. From this evidence, the jury was authorized to conclude that, by the time the group walked away from Rodregus, Daniels was aware that at least one of his associates had a gun and was likely to use it in attempting to rob Mikell. And Grant testified that Daniels did not abandon the group at this point, but instead proceeded with the others in the direction of Mikell. There also was evidence that Daniels remained for the attempted robbery of Mikell and did not seek to aid Mikell after he was shot but,

7

according to another eyewitness besides Redinburg, fled the scene. This was sufficient to corroborate Redinburg's testimony that Daniels participated in the murder of Mikell. And given Redinburg's particular testimony that Daniels pointed a gun at Mikell and then handed the gun to Griffin before Griffin shot Mikell, there was sufficient evidence from which the jury could conclude that Daniels shared a criminal intent to kill Mikell and was a party to the crime of malice murder. See *Thomas*, 296 Ga. at 486-488 (1) (evidence that appellant participated in convenience store robbery in which patron was shot by appellant's accomplice sufficient to sustain appellant's malice murder conviction); *Lattimore v. State*, 265 Ga. 102, 102-103 (1) (454 SE2d 474) (1995) (evidence that appellant agreed to help associate rob the victim and was seen running from the scene with the associate, who had a gun, seconds after shots were fired sufficient to sustain appellant's malice murder conviction); *Adams v. State*, 264 Ga. 71, 71-72 (2) (440 SE2d 639) (1994) (sufficient evidence to support appellant's malice murder conviction where, on the evening of the murder, appellant put murder weapon into his

vehicle, opened trunk for shooter to retrieve weapon, handed shotgun shells to the shooter, and fired another weapon into the air), overruled on other grounds by *Carr v. State*, 281 Ga. 43, 44 (635 SE2d 767) (2006).[2] The evidence thus being sufficient to support Daniels's conviction for malice murder, Daniels's claim that the evidence was insufficient to support a conviction for felony murder is moot, because the felony murder conviction was vacated by operation of law. See *Blackledge v. State*, 299 Ga. 385, 387 (1) n.3 (788 SE2d 353) (2016).[3]

---

[2] The cases cited by Daniels do not demand a contrary result. In *Moore v. State*, 255 Ga. 519 (340 SE2d 888) (1986), there was evidence that the appellant needed money, had been seen with the victim the day of the killing, and fled the state thereafter. Id. at 519-521 (1). But unlike here, there was only circumstantial evidence in *Moore* that the appellant was even present when the victim was killed. Id. at 521 (1). And in *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983), we found insufficient evidence where there was not even circumstantial evidence of the appellant's participation in the shooting of the victim by the appellant's brother, other than his mere presence. Id. at 864-865 (1). That case is also distinguishable in that the evidence cited in the opinion did not suggest a plan to rob the victim; the brothers testified they were hoping to retrieve a personal item and brought along a shotgun for protection given an earlier fight. Id. at 862-863. In addition, the appellant's brother testified that, upon arrival at the scene, the appellant told his brother that they should leave. Id. at 864-865 (1).

[3] Daniels has not challenged the sufficiency of the evidence for his conviction for the attempted armed robbery of Rodregus. But, per our usual practice in murder cases, we have reviewed the evidence supporting that

9

2. Daniels also argues that the trial court erred by sustaining the State's challenge to two of Daniels's peremptory strikes under *Georgia v. McCollum*, 505 U. S. 42 (112 SCt 2348, 120 LE2d 33) (1992). We conclude that the trial court did not clearly err in sustaining the State's challenges.

Noting that the defendants used all of their peremptory strikes against white jurors, the State challenged the defense's strikes as violating *McCollum*.[4] At issue here are the State's challenges to the defense's strikes of two jurors: Juror No. 27 and Juror No. 30.[5] The defense explained the strike of Juror No. 27 on the basis that the juror lived in a gated community and her husband had been a longtime school teacher. The State argued that living in a certain area was not a race-neutral explanation and stated that teachers and other school employees had been placed on the jury. Counsel

---

conviction, as well, and find that it was sufficient.

[4] The defendants combined their strikes, and Griffin's counsel spoke on behalf of the defense in response to the State's *McCollum* challenge.

[5] Although the State contested the defense's explanations for four strikes, the trial court upheld the challenge as to only Juror No. 27 and Juror No. 30.

defended the strike of Juror No. 30 on the basis that he was a first sergeant in the military with 27 years of service and had undergone expert firearms training, predicting that if he were placed on the jury, "he will be the foreperson and he will run the show. He's been doing it for 27 years."[6] The State responded that a black woman selected for the jury (Juror No. 4) indicated that she had been in the military as well and had firearms training.

The trial court ruled that the defense explanation as to its strike of Juror No. 27 was "a subterfuge for a racial strike" because gated communities in Chatham County "are typically predominantly Caucasian communities," and other educators were placed on the jury. And, noting Juror No. 4's responses, the trial court said that it could not find the defense's explanation as to Juror No. 30 "to be race neutral based on the circumstances of this case." The trial court put both Juror No. 27 and Juror No. 30 back on the jury, replacing two other white jurors who previously had been selected.

---

[6] The jury actually selected a black male barista as its foreperson.

In *McCollum*, the test announced in *Batson v. Kentucky*, 476

U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), forbidding purposeful

racial discrimination in the State's use of peremptory strikes, was

extended to peremptory juror challenges made by criminal

defendants. See *Dunn v. State*, 304 Ga. 647, 649 (2) (821 SE2d 354)

(2018).

> When the State raises a *McCollum* objection, the trial
> court must engage in a three-step process to determine if
> the defendant's peremptory challenges were used in a
> racially discriminatory manner. The opponent of a
> peremptory challenge must make a prima facie showing
> of racial discrimination; the burden of production shifts to
> the proponent of the strike to give a race-neutral reason
> for the strike; the trial court then decides whether the
> opponent of the strike has proven discriminatory intent.
> Although the burden of production shifts to the defendant
> if the State makes a prima facie case, the ultimate burden
> of persuasion as to discriminatory intent rests with — and
> never shifts from — the State.

Id. (citation and punctuation omitted). In determining whether the

trial court properly completed the three-step inquiry, we consider

"the context and the entirety of the discussion," and the fact that a

trial court uses the term "race neutral" in its ultimate conclusion

does not mean that it did not complete step three. Id. at 651-652 (2).

When all three steps of the *McCollum* analysis are completed and an explanation for the exercise of a peremptory strike is given, the trial court must ultimately decide the credibility of such explanation, and because the third step of the *McCollum* procedure mandates that the trial court act as the trier of fact, the trial court's findings are to be given great deference and are to be affirmed unless clearly erroneous.

Id. at 652 (2) (citation and punctuation omitted).

Here, assuming that Daniels preserved his defense of his strikes of both Juror No. 27 and Juror No. 30,[7] we ultimately resolve his claim of error on the basis that the trial court made a finding of discriminatory intent that was not clearly erroneous. We first note, however, that we question certain statements by the trial court to the extent that they suggested (perhaps inadvertently) that the defense did not offer race-neutral reasons for striking those jurors. Setting aside the racial housing patterns in Chatham County referenced by the trial court — something we cannot evaluate on

---

[7] An ambiguous statement by defense counsel at trial could be read as a waiver of Daniels's claim as to Juror No. 27. As the parties' arguments on the matter drew to a close, defense counsel clarified that he "like[d]" Juror No. 30 "personally," then added, "I don't have any problem with 27. Whatever the Court wants to do is okay in a gated community."

this record — Daniels argues on appeal that residing in a gated community correlates with attitudes about crime or those accused of it and thus that his stated reason for striking Juror No. 27 was not based on race.[8] Indeed, to the extent that this reflects an erroneous stereotype, it is a stereotype about residents of gated communities, not a stereotype about a particular racial group. Cf. *Smith v. State*, 264 Ga. 449, 449-451 (1) (448 SE2d 179) (1994) (prospective juror's residence in public housing project where gang activity was prevalent is race-neutral explanation for strike, particularly given that the appellant was accused of gang activity and the State's case hinged on the credibility of gang members). Similarly, Juror No. 30's experience as a senior noncommissioned military officer, which defense counsel speculated could lead him to bring outsized influence into the jury room, as well as his experience with firearms, are race-neutral reasons, as well. See *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996) (working as a supervisor and having

---

[8] We note that, at trial, the defense did not give this, or really any, explanation as to why a juror who lived in a gated community was undesirable to the defense.

14

an authoritarian personality are race-neutral reasons for strike; "trial court's finding that juror . . . was struck because he was a 'big white boss' is clearly erroneous"). Indeed, the Attorney General acknowledges in his brief that the defense "gave facially race-neutral responses" for the two prospective jurors.

But notwithstanding the trial court's statements that the strike of Juror No. 27 was a "racial strike" and that the reasons given for striking Juror No. 30 were not "race neutral," it is clear that the trial court nonetheless reached the third step of the *McCollum* inquiry and concluded that the defense had acted with discriminatory intent in striking the two jurors. After the defense team offered its explanations for striking each of the jurors, the trial court told the prosecutor that the burden shifted back to her to show pretext. After the prosecutor attempted to do so, the trial court stated that the explanations offered for Juror No. 27 were "subterfuge" in part because "there were other people who were educators who were placed on the jury." As to Juror No. 30, the trial court stated that it had a "problem" with the defense's explanation

15

in that that juror was similar to Juror No. 4, who also had military experience and firearms training. We note that the trial court also stated in its order denying Daniels's motion for new trial that it found "no error in its ruling that the State met its burden in showing that there was *discriminatory intent* for both of these strikes" (emphasis added). The trial court thus at least implicitly found that the defense's stated reasons for striking the two jurors were pretextual.

Daniels has not challenged the trial court's factual findings that the defense failed to strike jurors who were educators and failed to strike a black juror who had military experience and firearms training.[9] And when the trial court pointed out the similarity between Juror No. 30 and Juror No. 4, the black juror with military experience, the defense responded by misattributing comments to Juror No. 4. We thus cannot conclude on this record that the trial

[9] Although the race of all of the educators on the jury referenced by the trial court is not obvious from the record, and the trial court did not make particular findings in that regard, the court did point out that one of those jurors was Juror No. 4, the black juror whom the court compared to Juror No. 30.

court's finding of discriminatory intent was clearly erroneous. See *Flowers v. Mississippi*, __ U. S. __, __ (139 SCt 2228, 204 LE2d 638) (2019) (factors that a judge may consider in evaluating whether racial discrimination in use of peremptory strikes occurred include, but are not limited to, comparisons of jurors who were struck and jurors of a different race who were not struck, and misrepresentations of the record by proponent of strike in defending strikes before the trial court). We do not find a basis for reversal in the trial court's rejection of two of Daniels's peremptory strikes.

3. Finally, Daniels argues that, under the rule of lenity, the trial court erred by sentencing him for criminal attempt to commit armed robbery on Counts 3 and 4, rather than sentencing him for aggravated assault with intent to rob. This argument fails because Daniels was not charged with or convicted of aggravated assault with intent to rob, and he has not invoked the rule of lenity to challenge his prosecution for attempted armed robbery. See *Davis v. State*, 306 Ga. 140, 143 (2) (829 SE2d 321) (2019) (citing *State v. Hanna*, 305 Ga. 100, 105 (2) (823 SE2d 785) (2019)). And even if

Daniels had challenged his conviction in this way, that challenge would be unavailing because aggravated assault with intent to rob and attempted armed robbery do not have the same elements and are not the same offense. Id. at 143 (2) n.3. The trial court did not err by sentencing Daniels for attempted armed robbery.

*Judgment affirmed. All the Justices concur.*

Murder. Chatham Superior Court. Before Judge Abbot.

*Steven L. Sparger*, for appellant.

*Meg E. Heap, District Attorney, Jennifer L. Parker, Abigail B. Long, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.