**FIRST DIVISION
BARNES, P. J.,
MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 10, 2026**

# In the Court of Appeals of Georgia

A26A0315. WILSON v. THE STATE

BARNES, Presiding Judge.

After a jury trial, Ryan Edwin Wilson was convicted of reckless conduct as a lesser included offense of aggravated assault, criminal damage to property in the first degree, criminal damage to property in the second degree, and possession of a firearm during the commission of a felony.[1] Wilson filed a motion for new trial, as amended, which the trial court denied. This appeal followed in which Wilson contends that the trial court erred by granting the State's challenge to his peremptory strikes of two

---

[1] The trial court merged Wilson's conviction of criminal damage to property in the second degree into his conviction of criminal damage to property in the first degree for purposes of sentencing.

prospective jurors and reseating those jurors. For the reasons discussed below, we reverse.

1. Construed in favor of the verdict,[2] the evidence showed that on the night of December 29, 2019, the victim was driving to his mother's house when he swerved off the road to avoid a deer and crashed into a bush in Wilson's front yard. Wilson's wife came outside and asked the victim if he was okay, and the victim responded that he was fine and was trying to dislodge his truck from the bush. After Wilson's wife returned to the house, Wilson came outside and told the victim that law enforcement was on its way and that he should not leave. The victim told Wilson that he understood and that he was only trying to get his truck unstuck. Eventually, the victim was able to break free from the bush after placing his truck in reverse. However, as the victim backed his truck away from the bush, Wilson, who had retrieved his shotgun, fired several shots toward the victim, shattering the truck window. The victim suffered lacerations to his face and eye as a result of the shattered glass.

---

[2] "Double jeopardy prohibits the retrial of a criminal defendant when the evidence presented at the initial trial was not sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Childress v. State*, 268 Ga. 386, 387(1) (489 SE2d 799) (1997). Because of our decision infra in Division 2(a) that the judgment must be reversed, we address whether the evidence was sufficient to support the verdict returned by the jury. See id.

At the ensuing jury trial, the victim testified that he planned to wait for law enforcement to arrive after getting his truck unstuck; that he did not attempt to hit Wilson with his truck; that Wilson was not standing behind his truck when it broke free from the bush; and that he feared for his life when Wilson started shooting at him. According to a sheriff's deputy who responded to the scene, tire marks in Wilson's front yard did not extend to the porch area where the victim said that Wilson was standing before firing at him. Wilson testified in his own defense and claimed that he fired shots because the victim was backing up directly towards him and he feared for his life.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to enable a rational jury to find Wilson guilty beyond a reasonable doubt of reckless conduct and the other offenses of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319(III)(B) (99 SCt 2781, 61 LE2d 560) (1979). See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."). Because jurors rather than courts resolve questions regarding the credibility of witnesses and conflicts in the evidence, the jury was authorized to disbelieve Wilson's self-defense theory and instead credit the victim's

testimony about the shooting incident. See *Gude v. State*, 313 Ga. 859, 862–63 (874 SE2d 84) (2022).

2. Wilson argues that the trial court erred by sustaining the State's challenge to two of his peremptory strikes under *Georgia v. McCollum*, 505 U. S. 42 (112 SCt 2348, 120 LE2d 33) (1992).

In *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), the United States Supreme Court enunciated a test forbidding the State from engaging in purposeful racial discrimination in the exercise of its peremptory strikes, and in *McCollum*, 505 U. S. 42, the Supreme Court extended the test to peremptory challenges used by criminal defendants. See *Daniels v. State*, 306 Ga. 559, 563–64(2) (832 SE2d 372) (2019). "When the State raises a *McCollum* objection, the trial court must engage in a three-step process to determine if the defendant's peremptory challenges were used in a racially discriminatory manner." *Edwards v. State*, 301 Ga. 822, 824–25(2) (804 SE2d 404) (2017).

> First, the State is required to make a prima facie showing of racial discrimination. Second, the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike. At step two, the proponent of the strike need only articulate a facially race-neutral reason for the strike. Step two does not demand an explanation that is

4

persuasive, or even plausible. Nor does step two require the race-neutral explanation to be case-related or specific. Third, the trial court decides whether the opponent of the strike has proven discriminatory intent. At step three, the trial court must decide whether the opponent of the strike has proven the proponent's discriminatory intent in light of all the circumstances that bear upon the issue of racial animosity. Those circumstances may include an evaluation of the credibility of the strike's proponent, which in turn may depend on the specificity and case-relatedness of the explanation for the strike given at step two. Although the burden of production shifts to the defendant if the State makes a prima facie case, the ultimate burden of persuasion as to discriminatory intent rests with — and never shifts from — the State.

*Byrd v. State*, 314 Ga. 21, 23(2)(a) (875 SE2d 643) (2022) (citation modified).

In our review of a trial court's ruling under *McCollum*, "we afford deference to the trial court's findings and affirm them unless they are clearly erroneous." *Dunn v. State*, 304 Ga. 647, 649(2) (821 SE2d 354) (2018) (citation modified). But our deference is not without limits: a trial court commits reversible error if it "reject[s] the defendant's reasons at the second step and terminate[s] further inquiry." *Edwards*, 301 Ga. at 826(2) (citing *Jackson v. State*, 265 Ga. 897, 899(2) (463 SE2d 699) (1995), and *Burkett v. State*, 230 Ga. App. 676, 677(1) (497 SE2d 807) (1998)).

During jury selection, the State challenged Wilson's peremptory strikes of several of the non-white prospective jurors under *McCollum*. The State noted that Wilson was white, that the victim was African-American, that the defense struck "all minorities" from the jury, and that the racial composition of the jury did not resemble the racial composition of the pool of prospective jurors. The State argued that it had made out a prima facie case of racial discrimination and then stated, "So then the next step is, Judge, to go through each of the minority jurors that were struck and the defense has to justify the reason for each . . . of their strikes." The trial court then asked for the numbers of the stricken prospective jurors to be identified so that the strikes could be evaluated. The trial court ultimately found that several of the peremptory strikes exercised by defense counsel were proper, but that the strikes of Juror No. 3 and Juror No. 35 were not.

As to his reason for striking Juror No. 3, an African-American man, defense counsel stated that he "was the youngest member of the panel. He's closest in age to the victim in the case and thus might relate to him in terms of age. I believe we had him down at age 20 and, again, like I say, he's the youngest member of the panel. That is a race neutral reason. We would ask the Court to sustain our strike." Without

hearing from the State, the trial court responded, "I'll come back to that one," and then moved on to consider other peremptory strikes.

When the discussion later turned to the peremptory strike of Juror No. 35, defense counsel stated that he struck her because she appeared to be "disinterested in the proceedings." The trial court asked if Juror No. 35 was Asian, and the prosecutor responded, "She's African-American, Your Honor. All the Asian and African-American people were struck." The trial court then ruled: "I'm going to find that that is not race neutral. I'm going to put her back on. I'll tell you what else I'm doing. I'm putting [Juror No. 3] back on the jury, too." The trial court subsequently removed two jurors and reseated Jurors No. 3 and 35 on the jury, and the trial proceeded forward.

(a) Wilson contends that the trial court failed to follow the proper three-step test under *McCollum* for evaluating the State's challenge to defense counsel's peremptory strike of Juror No. 3. According to Wilson, the trial court erroneously rejected defense counsel's race-neutral explanation for striking Juror No. 3 without

7

proceeding to the third step of the *McCollum* test, thereby impermissibly shifting the

ultimate burden of persuasion as to discriminatory intent to the defense.[3]

After implicitly finding that the prosecution set out a prima facie case of racial

discrimination,[4] the trial court proceeded to step two by inquiring from defense

counsel his reasons for striking Juror No. 3. Defense counsel explained that he struck

---

[3] The State argues that the *McCollum* issue has been waived because Wilson did not object at the time that Juror No. 3 was reseated on the jury or raise the issue in his motion for new trial. However,

> the trial court's alleged error does not consist of the failure to sustain a belated defense objection. To the contrary, [Wilson] contends that the trial court erred by sustaining the State's objection to his use of a peremptory strike. That favorable ruling for the prosecution had already occurred at the time the trial court [reseated Juror No. 3 on the jury] and, under those circumstances, no after-the-fact contemporaneous objection was necessary in order to give the trial court an opportunity to take remedial action. The trial court's allegedly erroneous action occurred when it previously rejected [Wilson's] defense of his peremptory strike as non-racial, and the merits of his objection to that action on the part of the trial court were preserved for appeal.

*Allen v. State*, 280 Ga. 678, 680(2)(a) (631 SE2d 699) (2006). Cf. *State v. Sims*, ___ Ga. ___, ___ (2)(a)(i) (922 SE2d 24) (2025) (concluding that by opposing a motion to exclude certain evidence, the appellant "preserved for ordinary appellate review its objection to the exclusion of the evidence").

[4] Wilson does not challenge on appeal that the State made a prima facie showing of racial discrimination. In any event, "once the trial court requires the opponent of a . . . *McCollum* motion to give reasons for striking potential jurors, the preliminary issue of prima facie discrimination becomes moot." *White v. State*, 257 Ga. App. 723, 724(1) (572 SE2d 70) (2002).

Juror No. 3 because of his young age, which our Supreme Court has held is a facially race-neutral reason for a strike that satisfies step two. See *Dunn v. State*, 304 Ga. at 651(2) (concluding that defense counsel's "explanation, that the prospective juror was 'extremely young,' [was] a race-neutral reason"); *Walker v. State*, 281 Ga. 521, 522(3) n.4 (640 SE2d 274) (2007) (holding that striking of 21-year-old prospective juror and 22-year-old prospective juror "because of their youth" was race-neutral). See also *Jackson*, 265 Ga. at 898(2) ("Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race neutral." (citation modified)); *Toomer v. State*, 292 Ga. 49, 54(2)(b) (734 SE2d 333) (2012) ("At step two, the proponent of the strike need only articulate a facially race-neutral reason for the strike."). And because defense counsel carried his burden of providing a facially race-neutral reason for the peremptory strike of Juror No. 3, the trial court should have advanced to step three of the *McCollum* test and decided whether the State met its burden of proving defense counsel's "discriminatory intent in light of all of the circumstances that bear upon the issue of racial animosity." *Toomer*, 292 Ga. at 54(2)(b) (quotation marks omitted).

The trial court, however, failed to follow that procedure. Instead, after defense counsel provided a race-neutral reason for striking Juror No. 3, the trial court did not hear argument from the State and deferred ruling on the issue. Subsequently, without any further argument about Juror No. 3 and in the midst of a discussion over another prospective juror, the trial court ruled that it was reseating Juror No. 3 on the jury. The record therefore reflects that the trial court "rejected the defendant's reasons at the second step and terminated further inquiry" instead of proceeding to the third step. *Edwards*, 301 Ga. at 826(2). Moreover, even if we were to assume that the trial court recognized defense counsel's reason for striking Juror No. 3 was race-neutral but refused to accept it because the court concluded without further inquiry that the explanation was pretextual, "the trial court prematurely evaluated the persuasiveness of [defense counsel's] explanation, thereby impermissibly placing the ultimate burden of persuasion upon the proponent of the strike." *Jackson*, 265 Ga. at 899(2).

Because the trial court erroneously rejected defense counsel's step two race-neutral explanation for striking Juror No. 3 "and erroneously failed to determine in step three whether the State proved racially discriminatory intent," Wilson "was tried

before an illegally constituted jury and must be given a new trial."[5] *Harrison v. State*, 257 Ga. App. 718, 719–20 (572 SE2d 4) (2002). See *Chandler v. State*, 266 Ga. 509, 510 (467 SE2d 562) (1996); *Jackson*, 265 Ga. at 899–900(2). See also *Burkett*, 230 Ga. App. at 676–77(1) (concluding that the defendant was entitled to a new trial because the trial court failed to properly apply *McCollum* when it rejected the defendant's race-neutral explanations without any additional argument from the State); *Gilbert v. State*, 226 Ga. App. 230, 230–32 (486 SE2d 48) (1997) (holding that the defendant was entitled to a new trial, where the trial court heard the defendant's race-neutral explanations for striking two prospective jurors and then rejected the explanations without further inquiry). Accordingly, we reverse the judgment.[6]

---

[5] We cannot simply remand for the trial court to apply the proper *McCollum* analysis, as the trial occurred over two years ago; a new trial judge was assigned to the case after the trial; and while the portions of voir dire addressing the State's *McCollum* motion were transcribed, the individual voir dire of the prospective jurors was not. See *McBride v. State*, 247 Ga. App. 767, 771(1) n.20 (545 SE2d 332) (2001) ("We reject as impractical the idea of remanding this case to the trial court for a determination on the issue of discriminatory intent, recognizing the difficulty of making such a factual determination based on a cold transcript of a jury selection two and a half years ago.").

[6] Under certain circumstances, appellate courts can determine "from the context and the entirety of the discussion" that the trial court implicitly moved beyond step two and engaged in the proper step-three analysis. *Dunn v. State*, 304 Ga. 647, 651(2) (821 SE2d 354) (2018). But that is not the situation here. Unlike in such cases, the trial court in the present case did not ask the prosecutor to respond when

(b) In light of our decision supra in Division 2(a), we need not decide whether the trial court erred in reseating Juror No. 35.

*Judgment reversed. Markle and Hodges, JJ., concur.*

---

defense counsel proffered his race-neutral reason for striking Juror No. 3 or otherwise hear from or engage with the prosecution and defense over whether the race-neutral explanation was pretextual and whether the strike was made with discriminatory intent. Compare *Byrd v. State*, 314 Ga. 21, 27(2)(c) (875 SE2d 643) (2022) (holding that trial court implicitly engaged in a step-three analysis, where "the trial court allowed the State to respond to [the defense's] proffered race-neutral reasons and listened to — and at times participated in — an exchange between the parties about the *McCollum* challenges to the relevant jurors"); *Hogan v. State*, 308 Ga. 155, 160(2)(a) (839 SE2d 651) (2020) (concluding that although the trial court initially prevented the prosecutor from responding to defense counsel's race-neutral explanation for the peremptory strike, the court later "requested a response from the prosecutor after defense counsel gave reasons for the peremptory strike . . . , implicitly indicating it was moving to step three") (quotation marks omitted).